**DENBICARE U.S.A. INC., and Ernest McCoy, Plaintiffs–Appellants,**

v.

**TOYS "R" US, INC., Defendant–Appellee.**

No. 94–16615.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 1996.

Decided May 24, 1996.

---

Ernest H. McCoy, Bruce & McCoy, Oakland, California; Christopher J. Palermo, Fish & Richardson, Menlo Park, California, for plaintiffs-appellants.

Paul Fields, Darby & Darby, New York City; Neil A. Smith, Limbach & Limbach, San Francisco, California, for defendant-appellee.

Before ALARCON, LEAVY, and KLEINFELD, Circuit Judges.

LEAVY, Circuit Judge:

Denbicare U.S.A. Inc. ("Denbicare") and Ernest H. McCoy appeal from a partial final judgment entered under Rule 54(b) after grants of summary judgment against them on their claims of copyright infringement, trademark infringement, unfair competition, and tortious denial of contract against Toys "R" Us ("Toys"). We have jurisdiction under 28 U.S.C. § 1291 and affirm.

*FACTUAL BACKGROUND*

Denbi Products, Inc. ("DPI"), a California company founded in 1981, sold reusable diapers made according to a design patented by its president, Debra Shaw. In 1983, DPI ordered a large quantity of diapers from its Hong Kong manufacturer. Approximately 450,000 diapers (the "Hong Kong diapers") were shipped by the manufacturer to the United States and held in the foreign trade zone [1] in San Francisco awaiting DPI's payment of import duties. The parties dispute whether these diapers were defective, but Denbicare does not dispute that DPI did not formally reject the diapers as defective.

DPI filed for bankruptcy in the Northern District of California in 1984. At a trustee's sale in September 1985, McCoy purchased DPI's United States and Canadian patents on the diapers, its copyrights in the packaging, and its trademarks. McCoy then formed Denbicare, became its president, and licensed the purchased intellectual property rights to it; Denbicare began making and selling reusable diapers. Toys purchased diapers from Denbicare.

In November 1986, DPI's bankruptcy trustee applied to the bankruptcy court for approval of a sale of the Hong Kong diapers, which were still in the foreign trade zone, to Marc Rosenberg and Raul Martinez. McCoy objected to the sale because of his ownership of the United States patents, trademarks, and copyrights, and asked the court to confirm the sale only in conjunction with the issuance of a permanent injunction against "selling, reselling, distributing or disposing" of the diapers in the United States or Canada. The bankruptcy court entered such an injunction on December 4, based on the "stipulation of [McCoy and the purchasers] in open court." McCoy registered no further objection and the court approved the sale on December 29, 1986.

**1.** A foreign trade zone is "a restricted-access site, in or adjacent to a Customs port of entry." 15 C.F.R. § 400.2 (1995). "Goods that are in these zones may be stored, sold, exhibited, broken-up, repacked, assembled, distributed, sorted, and mixed with foreign or domestic merchandise without being subject to customs laws. Through these zones, United States citizens [can] be involved in and, consequently financially profit from the breaking down, repacking and relabelling of the goods." *Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 504 (9th Cir.1991) (citations and internal quotation marks omitted).

In March 1987, Denbicare's CEO and its manufacturers representative met with a Toys buyer at Toys' headquarters in Paramus, New Jersey. The meeting concerned Toys' inventory of Denbicare diapers, which was packaged in a format that Denbicare was no longer using. The parties dispute whether an agreement was reached at this meeting concerning the repackaging of this inventory and what the terms of any such agreement were.

Clark Harris, doing business as Clark Harris Sales, bought about 235,000 of the Hong Kong diapers from Jaime Martinez, and in turn sold the diapers to Toys under a contract dated August 17, 1987. Neither Harris nor Toys had any notice of the bankruptcy court's injunction or any reason to believe that the diapers were not legally in the United States and freely marketable. Denbicare discovered in October 1987 that Toys was selling the diapers in the original copyrighted boxes (bearing the original trademark) and attempted unsuccessfully to persuade Toys to remove the diapers from sale. Toys attempted unsuccessfully to persuade Harris to take back the diapers.

### PROCEDURAL HISTORY

In November 1987, Denbicare brought this action in the United States District Court for the Northern District of California alleging patent infringement, copyright infringement, trademark infringement, unfair competition, breach of contract, and tortious bad-faith denial of contract. At Denbicare's request the district court enjoined sale of the Hong Kong diapers.

In January 1989, after a two-day hearing, then-Magistrate Judge Claudia Wilken found that the diapers were not defective. The district court dissolved the injunction against sale in May 1989, but did not adopt Judge Wilken's finding that the diapers were not defective, stating that the issue of defectiveness was to be decided at trial.

Denbicare moved for dismissal of its claim for patent infringement. Toys opposed the motion and sought leave to amend its answer to add a counterclaim seeking a declaratory judgment that Denbicare's patents were in-

valid. The district court granted Denbicare leave to amend its complaint pursuant to Federal Rule of Civil Procedure 15 to dismiss the patent infringement claim with prejudice. The district court also granted Toys leave to amend, but asked the parties to brief whether it had jurisdiction to hear the counterclaim under the Declaratory Judgment Act. After briefing, the district court found that Toys potential for liability was "purely speculative," and dismissed the counterclaim under *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 944 (9th Cir.1981), which requires a party seeking a declaratory judgment of patent invalidity to demonstrate "a real and reasonable apprehension that he will be subject to liability" for his activity.

On October 5, 1989, the court granted Toys' motion for summary judgment on Denbicare's claim of copyright infringement. At the same time, the court granted Denbicare's motion for summary judgment on its trademark infringement claims, but on November 7 it granted Toys' motion for reconsideration and denied summary judgment on the trademark claims.

Although the case had been set for trial in November 1989, the Loma Prieta earthquake in October of that year forced a delay until March 1991. Meanwhile, the case was transferred to Judge Fern Smith, who referred it to a magistrate judge and then adopted his recommendation that she review the trademark claims de novo. In December 1991, Judge Smith ruled against Denbicare on its trademark claims. In May 1993, Judge Smith granted Toys' motion for summary judgment on Denbicare's claim of tortious denial of contract. In October 1993, the case was reassigned to Chief Judge Henderson for trial.

As the trial was set to begin, Clark Harris was unable to appear because of a serious back injury he had just suffered. In the interests of judicial economy, the parties and the court agreed that the court should enter a partial final judgment under Rule 54(b) on its summary judgment rulings against the plaintiff on the copyright, trademark, unfair competition, and tortious denial of contract claims in order to allow the plaintiff to appeal

those rulings; the trial of the remaining contract issue was stayed pending a decision on appeal. Denbicare and McCoy timely appealed.

## JURISDICTION

Toys moved to dismiss this appeal, arguing that appellate jurisdiction in this case lies properly in the Court of Appeals for the Federal Circuit.

### I. Discussion

The Federal Circuit has exclusive jurisdiction under 28 U.S.C. § 1295(a)(1) over appeals from final district court decisions when the district court's jurisdiction "was based, in whole or in part," on the patent provisions of 28 U.S.C. § 1338.[2] A district court has jurisdiction under the relevant portions of § 1338 over actions "arising under any Act of Congress relating to patents." The Supreme Court has held that the standards for determining whether an action "arises under" the patent laws are the same as those for determining whether an action "arises under" federal law for purposes of the general federal-question jurisdiction granted in 28 U.S.C. § 1331 and include the well-pleaded-complaint rule. See, e.g., Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 807–809, 108 S.Ct. 2166, 2172–74, 100 L.Ed.2d 811 (1988).

■ The mere fact that the present appeal relates only to nonpatent issues does not mean that jurisdiction is not in the Federal Circuit. "[W]hen the district court's jurisdiction is based in part on § 1338, the appeal of the *entire case*, not solely the patent claims, lies in" the Federal Circuit. *Schwarzkopf Dev. Corp. v. Ti–Coating, Inc.*, 800 F.2d 240, 244 (Fed.Cir.1986) (emphasis supplied). *See also Abbott Lab. v. Brennan*, 952 F.2d 1346, 1349–50 (Fed.Cir.1991) ("The path of appeal is determined by the basis of jurisdiction in the district court, and is not controlled by the district court's decision or the substance of the issues that are appealed."), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2993, 120 L.Ed.2d

870 (1992). The Federal Circuit has also held that it has exclusive appellate jurisdiction "when a nonfrivolous well-pleaded compulsory patent law counterclaim is present in a case originally and properly filed in the district court." *Aerojet–General Corp. v. Machine Tool Works, Oerlikon–Buehrle Ltd.*, 895 F.2d 736, 741 (Fed.Cir.1990). *See also Xeta, Inc. v. Atex, Inc.*, 825 F.2d 604 (1st Cir.1987).

As discussed above, both Denbicare's patent claim and Toys counterclaim for a declaratory judgment that Denbicare's patents are invalid were dismissed by the district court. The propriety of these dismissals is not before us in this appeal, although, by opposing the dismissals, Toys has preserved its right to raise the issue in a subsequent appeal.

■ A district court's dismissal of all patent claims or patent counterclaims, when unopposed, will remove the appeal of a district court decision on nonpatent issues from the exclusive jurisdiction of the Federal Circuit. *See Gronholz v. Sears, Roebuck and Co.*, 836 F.2d 515, 518 (Fed.Cir.1987); *Schwarzkopf Dev. Corp.*, 800 F.2d at 245. Here, however, while all patent claims have been dismissed from the case, the dismissals were contested. We must decide whether we, nonetheless, have jurisdiction over the appeal of a partial final judgment granted under Rule 54(b) on certain nonpatent issues.

■ The legislative history of the Federal Courts Improvement Act of 1982, the law that created the Court of Appeals for the Federal Circuit, indicates that we have jurisdiction. The report of the House Judiciary Committee states that "[s]hould questions legitimately arise respecting ancillary and pendent claims and for the direction of appeals in particular cases, the Committee expects the courts to establish, as they have in similar situations, jurisdictional guidelines respecting such cases." H.R.Rep. No. 97–312, 97th Cong., 1st Sess. 41. One prominent commentator has suggested the use of Rule 54(b) in such situations: "If there is to be any such division and channeling of appeals,

2. For a general discussion of the patent jurisdiction of the Federal Circuit, *see* Donald S. Chisum, *3 Patents* § 11.06[3][e] (1995).

the appropriate vehicle would seem to be the procedures and standards already developed under Rule 54(b)....'' Chisum, *Patents* § 11.06[3][e][iii]. In addition, at least one circuit has suggested this approach. In *Unique Concepts, Inc. v. Manuel*, 930 F.2d 573 (7th Cir.1991), Judge Easterbrook rejected a patent plaintiff's argument that the regional circuit had jurisdiction over its appeal of a judgment against it on the defendant's state-law counterclaims heard in diversity, even though the patent claims had been bifurcated for trial after the state-law claims and the plaintiff, after losing on the latter claims, was granted leave (conditioned on execution of a covenant not to refile) to dismiss its patent claims without prejudice. The court noted that ''[i]f the district judge had used Fed. R.Civ.P. 54(b) to separate the [state-law] claims from the patent claims, then [plaintiff] would have a better argument. That final decision really would depend wholly on § 1332 [for jurisdiction].''[3] 930 F.2d at 575.

The Senate Judiciary Committee Report also lends support to this approach. That committee expressed concern that parties might insert patent claims into a case in order to avoid the appellate jurisdiction of the relevant regional circuit; it gave the example of a plaintiff who joined a patent claim to ''a case whose gravamen is antitrust.'' S.Rep. No. 97–275, 97th Cong., 1st Sess. 20 (1981), *reprinted in* 1982 U.S.C.C.A.N. 11, 30 (hereinafter *Senate Report*). The report explained how to avoid this problem:

> Federal District judges are encouraged to use their authority under the Federal Rules of Civil Procedure, *see* Rules 13(i), 16, 20(b), 42(b), 54(b), to ensure the integrity of the jurisdiction of the federal court

of appeals by separating final decisions on claims involving substantial antitrust issues from trivial patent claims, counterclaims, cross-claims, or third party claims raised to manipulate appellate jurisdiction.

The Committee intends for the jurisdictional language to be construed in accordance with the objectives of the Act and these concerns. If, for example, a patent claim is manipulatively joined to an antitrust action but severed or dismissed before final decision of the antitrust claim, jurisdiction over the appeal of the antitrust claim should not be changed by this Act but should rest with the regional court of appeals.

*Id.* Here, the district court's use of Rule 54(b) to separate the certain nonpatent claims for partial final judgment fits within the scope of the committee's intent. Because the district court both dismissed all patent claims from this case and separated its decision on the merits of the nonpatent claims through the grant of a partial final judgment under Rule 54(b), we have appellate jurisdiction over the partial final judgment.

## DISCUSSION

### I. Copyright Claims

#### A. Importation

■ Denbicare claims that Toys has infringed its exclusive right of distribution in a copyrighted work—the box in which the diapers are packaged—through the sale of copies imported without authorization. Section 106 of Title 17 of the United States Code grants a copyright owner the exclusive right to distribute copies of the copyrighted work. Section 602 of the Act provides that ''[i]mportation into the United States,[4] without the

---

3. The court noted, however, that it ''need not decide whether Rule 54(b) can be used to direct an appeal to a particular circuit.'' *Id.*

4. The 1976 Copyright Act does not define that phrase, or the word ''importation,'' and we have found no reported cases interpreting those terms as used in § 602. We have also found no reported cases concerning the general applicability of copyright laws in a foreign trade zone, although courts have held that patent and trademark laws apply in such zones. *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179–80 (11th Cir. 1994) (trademarks); *Ocean Garden*, 953 F.2d at

504–06 (trademarks); *A.T. Cross Co. v. Sunil Trading Corp.*, 467 F.Supp. 47 (S.D.N.Y.1979) (trademarks); *G.D. Searle & Co. v. Byron Chem. Co.*, 223 F.Supp. 172, 174 (E.D.N.Y.1963) (patent). In addition, at least one Customs Decision has held that ''[f]oreign goods entering a foreign trade zone are considered to be physically imported into the United States'' though those goods are not subject to import duties in the zone. 16 Cust. B. & Dec. 701, 702 (1981) (C.S.D.82–16). This decision relied on a prior customs decision holding that ''unless it clearly appears that Congress intended otherwise, the

authority of the owner of copyright under this title, of copies or phonorecords of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies or phonorecords under section 106." 17 U.S.C. § 602(a). Section 602 bars unauthorized importation *only* of "copies ... that have been acquired outside the United States." *Id.* The legislative history of the Act highlights this fact: "Section 602(a) first states the general rule that unauthorized importation is an infringement merely if the copies or phonorecords 'have been acquired outside the United States'...." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 169 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5785. Given the 1976 Act's definition of the term "United States,"[5] it seems highly improbable that Congress intended, without remarking on the fact at all, that Foreign Trade Zones on the geographic and political territory of the United States be considered "outside the United States" for purposes of the acquisition required for a violation of § 602 by importation. As the Customs Court has noted, the laws authorizing these zones draw "a patent distinction ... between the boundaries delineating the geographical territory of the United States and the Customs territory of the United States." *Hawaiian Indep. Refinery v. United States,* 81 Cust.Ct. 117, 121–22, 460 F.Supp. 1249, 1253 (1978). Because the diapers were already in the United States, Toys did not violate Denbicare's exclusive distribution right under § 602.

### B. First Sale

A copyright owner receives, under 17 U.S.C. § 106(3), the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending" or to authorize such distribution. While Toys is not liable for violating the distribution right by an importation prohibit-

ed by § 602, its sales of the diapers to the public could violate the basic distribution right itself, since Denbicare, as copyright owner, has the exclusive right to sell copies to the public and Toys does not have Denbicare's authorization for its sales. Denbicare's exclusive distribution right, however, is limited by the "first sale" doctrine set forth in 17 U.S.C. § 109(a): "the owner of a particular copy or phonorecord lawfully made under this title ... is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord." Whether Toys' sales of the diapers infringe Denbicare's exclusive distribution right therefore turns on whether or not the diapers have already been the subject of a first sale. Toys asserts, and the district court ruled, that the sale of the diapers by the bankruptcy trustee constituted a first sale.

Denbicare argues that there has been no first sale for the purposes of § 109 because such a sale must be in the United States and the sale by the bankruptcy trustee occurred in a foreign trade zone and not in the United States. The requirement that the sale be in the United States comes from our opinions in *BMG Music v. Perez,* 952 F.2d 318 (9th Cir.1991), *cert. denied,* 505 U.S. 1206, 112 S.Ct. 2997, 120 L.Ed.2d 873 (1992), and *Parfums Givenchy, Inc. v. Drug Emporium, Inc.,* 38 F.3d 477 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1315, 131 L.Ed.2d 197 (1995), cases which examined the relationship between the importation right in § 602 and the first-sale doctrine of § 109. *BMG Music* held that "[t]he words 'lawfully made under this title' in § 109(a) grant first sale protection only to copies *legally made and sold* in the United States." 952 F.2d at 319 (emphasis supplied). *Parfums Givenchy* acknowledged widespread criticism of this language,[6] which, "if taken literally, would render the first sale doctrine

---

term 'importation' ... mean[s] the bringing of goods within the jurisdictional limits of the United States with intent to unlade." *Id.* (citing *American Customs Brokerage Co. v. United States,* 72 Cust.Ct. 245, 375 F.Supp. 1360 (1974)).

5.  "The 'United States', when used in a geographical sense, comprises the several States, the Dis-

trict of Columbia and the Commonwealth of Puerto Rico, and the organized territories under the jurisdiction of the United States Government." 17 U.S.C. § 101.

6.  *See, e.g.,* Paul Goldstein, *Copyright* § 5.6.1.2.a.

wholly inapplicable to foreign manufactured goods, even after the goods have been lawfully imported into the United States with the authorization of the U.S. copyright holder." 38 F.3d at 482 n. 8. Agreeing that "such a result would be untenable, and that nothing in the legislative history or text of [the 1976 Copyright Act] supports such an interpretation," we held that the language in *BMG Music* was limited to the facts of that case and "sales *abroad* of foreign manufactured United States copyrighted materials do not terminate the United States copyright holder's exclusive distribution rights in the United States under §§ 106 and 602(a)." *Id.* (citations omitted) (emphasis in original). Thus, under the law of the circuit, § 109 applies to copies made abroad only if the copies have been sold in the United States by the copyright owner or with its authority.

■ In this case, there was such a sale. As discussed above, the foreign trade zone is part of the United States, although it is not part of its customs territory. The bankruptcy trustee's sale of the diapers in the foreign trade zone was therefore a sale in the United States sufficient to bring § 109 into play.

■ Denbicare next argues that no first sale occurred because such a sale requires the consent of the copyright owner and it consented only to the sale of the diapers outside the United States and Canada. It is clear, however, that McCoy consented to the first sale, i.e., the sale of the diapers by the bankruptcy trustee, although with a restriction (imposed through an injunction issued by the bankruptcy court) that the buyers not resell the diapers in the United States or Canada. The bankruptcy trustee filed an application to sell the diapers. McCoy filed an objection to the sale, stating that the distribution of the diapers in the United States or Canada would injure his business and requesting that the court not approve the sale unless it also enjoined the buyers from reselling the diapers in those countries. Based on a "stipulation ... stated in open court" by McCoy, the debtor, and the pur-

chasers, the court enjoined the prospective purchasers of the diapers from reselling them in the United States and Canada and filed an order approving the sale.

When McCoy objected to the sale of the diapers, he could have exercised his right as the owner of the copyright in the diaper boxes to prevent the bankruptcy trustee's sale altogether. The proposed sale would have constituted a distribution of copies of the copyrighted work, and McCoy, as the copyright owner, had the exclusive right under § 106(3) to make or authorize such distributions. Without his authorization, the bankruptcy trustee's sale—a sale of copies located within the physical territory of the United States that required the approval of a federal court in California—would have been an infringement of his copyright. Instead of seeking to prevent this infringing sale, however, McCoy stipulated in court that the sale could proceed if the buyers were enjoined from reselling in the United States and Canada. Thus, McCoy consented to the sale of the copies; the fact that the buyers later violated the conditions imposed on the sale does not negate his consent. *Cf. United States v. Wise,* 550 F.2d 1180, 1187 (9th Cir.1977).

■ Finally, Denbicare argues that no first sale occurred because it received no economic reward as copyright owner from the sale. Denbicare bases its argument that such a reward is a prerequisite to a first sale not on the language or history of § 109 but on *Platt & Munk Co. v. Republic Graphics, Inc.,* 315 F.2d 847 (2d Cir.1963), a case interpreting § 27 of the 1909 Copyright Act, the predecessor provision to § 109.

Even if the "reward" test of *Platt & Munk* is a proper interpretation of § 109(a) in civil cases in this circuit,[7] it is not relevant to this case. *Platt & Munk* involved a situation in which the defendant had not acquired the copies through a prior sale that was allegedly a first sale; rather, the defendant owned the copies because it had manufactured them under authority of the copyright owner, and

---

7. We rejected the test in the criminal context in *United States v. Atherton,* 561 F.2d 747, 751 (9th Cir.1977), and one commentator has questioned whether or not this interpretation of § 109's pre-

decessor should be applied to § 109 at all, given the differences between the two sections and the two Acts. 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8.12[B][3][b]-[c].

it argued that this ownership qualified it for the exemption, granted by § 27, from the copyright owner's exclusive distribution right. Toys does not argue that the bankruptcy trustee was entitled to sell the diaper boxes because the debtor owned them through its lawful manufacture of them while the debtor owned the copyright. Instead, Toys argues that the bankruptcy trustee's sale was a first sale because the owner of the copyright at the time of the sale—McCoy—consented to that sale. Because the "reward" test of *Platt & Munk* is designed to determine when a sale that is "not ... truly voluntary" is a first sale, 315 F.2d at 854, that test is irrelevant here: the bankruptcy trustee's sale was voluntary as to Denbicare and to McCoy because McCoy consented. Just as courts will not inquire into the sufficiency of consideration, there is no justification for reexamining the adequacy of the "reward" received by the copyright owner in an alleged first sale where the owner has consented to that sale.

## II. Trademark Claims

■ Denbicare appeals the district court's grant of summary judgment, based on the "first sale" doctrine, on its trademark infringement claims. In *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073 (9th Cir.), *cert. denied*, — U.S. ——, 116 S.Ct. 302, 133 L.Ed.2d 207 (1995), we held that, subject to certain exceptions, "the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product. Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition." *Id.* at 1074. Thus, if the bankruptcy trustee's sale of the diapers was a first sale, Toys' resale of the diapers would not in itself infringe Denbicare's trademark. Denbicare argues that the trustee's sale was not a trademark first sale for the same reasons that it argued it was not a copyright first sale. Denbicare has not argued that different criteria apply in determining what constitutes a first sale in the copyright and trademark contexts. Since the trustee's sale qualified as a first sale for copyright purposes, it is a trademark first sale as well.

Denbicare tries to bring itself within an exception to the "first sale" rule by arguing that the rule does not apply if the goods sold subsequently deteriorate in the chain of distribution, citing *Shell Oil Co. v. Commercial Petroleum, Inc.*, 733 F.Supp. 40 (W.D.N.C. 1989), *aff'd* 928 F.2d 104 (4th Cir.1991); *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F.Supp. 131 (D.Colo.1980); *Polaroid Corp. v. Blue Dot Corp.*, 214 U.S.P.Q. 192, 1981 WL 48175 (D.N.J.1981), *aff'd* 688 F.2d 823 (3d Cir.1982); *J.C. Penney Co. v. Charbeth's Little Gen. Store*, 185 U.S.P.Q. 254, 1975 WL 21130 (E.D.N.Y.1975); and *J.C. Penney Co. v. Parrish Co.*, 335 F.Supp. 209 (D.Idaho 1971). Denbicare, however, has not raised any genuine issue of material fact that the diapers in this case deteriorated in the distribution chain after the trustee's sale or were the type of product subject to such deterioration. At best, Denbicare has raised a triable issue as to whether the diapers were defective when they arrived in the foreign trade zone and were sold by the trustee. Even if Denbicare can prove that the diapers were defective at the time of the trustee's sale, it will only have demonstrated that it consented to the release of the diapers into commerce with knowledge of their defectiveness; that knowledge and consent at the time of the sale bar Denbicare from now asserting that it has the right, despite the "first sale" doctrine, to prevent Toys from selling the diapers in order to protect the reputation of its mark from injuries stemming from the sale of defective diapers.

Denbicare also argues that this case is controlled by *A. Bourjois & Co. v. Katzel*, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464 (1923). We have interpreted the holding in *Katzel* as being limited to "cases presenting the same 'equities'" as that case. *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1510 (9th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987). This case does not fall within the "equities" of *Katzel*, and, under *NEC Elecs.*, the *Katzel* decision does not control this case.

■ Finally, Denbicare argues that the bankruptcy court's injunction, which barred the original purchasers of the diapers from

selling them in the United States or Canada, created an express condition that ran with an implied license to sell the goods. Arguing by analogy to patent law, where a first sale is considered to grant the purchaser an implied license to use or sell the patented good or process, Denbicare suggests that the trademark "first sale" doctrine contains an implied license component. Denbicare cites no authority for this proposition and offers no explanation of why trademark's "first sale" doctrine should be made to conform to patent law, rather than to copyright law, which holds that conditions placed on a first sale do not run with the goods. *See, e.g., American Int'l Pictures, Inc. v. Foreman,* 576 F.2d 661, 664 (5th Cir.1978) ("first sale" buyer's disregard of restrictions on resale does not make buyer—or subsequent buyer—an infringer; copyright holder's remedy is suit for breach of contract containing the restrictions); *United States v. Wise,* 550 F.2d 1180, 1187 (9th Cir.) (after first sale, "exclusive right to vend the transferred copy rests with the vendee, who is not restricted by statute from further transfers of that copy, even though in breach of an agreement restricting its sale"; vendee "may be liable for the breach but he is not guilty of infringement"), *cert. denied,* 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977).

### III. Unfair Competition Claims

■ Denbicare appeals the district court's grant of summary judgment to Toys on the various federal and state unfair competition claims. The district court held that its ruling that the "first sale" doctrine defeated Denbicare's trademark claims also defeated "those causes of action that sound in trademark," and "all the . . . unfair competition causes of action" were therefore dismissed. Denbicare now argues that "some" of its unfair competition claims are based on deceptive trade practices rather than trademark infringement, but it does not identify which claims those are.

Denbicare's claim under the Lanham Act § 43(a), 15 U.S.C. § 1125(a), clearly sounds in trademark; Denbicare complains that Toys' "use of the mark 'DenBi' and the trade dress, style, and labeling of plaintiffs[ ] . . . have the effect of creating a false designation of origin or a false description as to the source" of the goods. Denbicare also alleges that Toys "competed unfairly by selling smuggled diapers at a devastating price advantage," but it has failed to cite any authority indicating the Lanham Act offers a remedy for the sale of "smuggled" products at a price advantage, even if it has raised a genuine issue as to whether the diapers were smuggled. Denbicare argues that Toys sold the diapers without marking them as defective or irregular, but even if Denbicare has raised a genuine issue as to irregularity or defectiveness, it consented to the original sale of the diapers without such markings. Denbicare's common-law unfair competition cause of action alleges that Toys is "palming or passing off [the Hong Kong diapers] as those of DENBICARE," but the diapers Toys sold were in fact manufactured for the trademark owner from which Denbicare bought its trademark rights.

Denbicare also alleges that Toys violated § 17200 of California's Business and Professions Code.[8] "[S]tate common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.,* 30 F.3d 1255, 1262–63 (9th Cir.1994) (citing *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.,* 944 F.2d 1446, 1457 (9th Cir. 1991)). Thus, since dismissal of Denbicare's Lanham Act claim was proper, dismissal of its § 17200 claim was proper as well.

Finally, Denbicare claimed Toys violated § 17500 of the Business and Professions Code, which prohibits making any "statement," in connection with the sale of personal property, "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." At least one reported

---

8. "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

case has held that "imitation of ... distinctive packaging and trade dress" violates § 17500, *St. Ives Lab., Inc. v. Nature's Own Lab.*, 529 F.Supp. 347, 350 (C.D.Cal.1981), but that case held that the same conduct also violated § 43(a) of the Lanham Act. Thus, even if Denbicare has alleged conduct that would violate § 17500, that claim was properly dismissed since the Lanham Act unfair competition claim was properly dismissed.

*IV. Tortious Denial of Contract Claim*

Denbicare appeals the district court's grant of summary judgment to Toys on Denbicare's claim of tortious denial of contract. The district court held that New Jersey law governed the contract between the parties and granted summary judgment to Toys since New Jersey law does not recognize a tort of denial of contract. Denbicare argues that the district court erred in ruling that New Jersey law, rather than California law, governs the contract.

■ This issue is now moot because while this appeal was pending the California Supreme Court abolished the tort of denial of contract. *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 44 Cal.Rptr.2d 420, 900 P.2d 669 (1995). Thus, even if California law governed the contract, Toys would still have been entitled to summary judgment against Denbicare's claim for tortious denial. Therefore, the district court's grant of summary judgment is affirmed.

*CONCLUSION*

We have jurisdiction over this appeal because the district court eliminated all patent claims from this case and its grant of a partial final judgment on certain nonpatent issues sufficiently separated out the nonpatent issues. The district court's grant of summary judgment for Toys on Denbicare's copyright, trademark, unfair competition, and tortious denial of contract claims is

AFFIRMED.

* The Honorable Samuel P. King, Senior District Judge for the District of Hawaii, sitting by desig-