**SEBASTIAN INTERNATIONAL, INC., Plaintiff,**

v.

**Vincenzo RUSSOLILLO, an individual, et al., Defendants.**

**No. 00–03476–CM.**

United States District Court, C.D. California.

Aug. 25, 2000.

William C. Conkle, John A. Conkle, Eric S. Engel, Scott Hampton, Conkle & Olesten, Santa Monica, CA, Thomas J. Nolan, Joanne E. Caruso, Michael L. Turrill, Howrey Simon Arnold & White, LLP, Los Angeles, CA, for plaintiff.

Norman H. Levine, Alison F. Clarke, Michelle M. Lynn, Suann C. MacIsaac, Linda K. Netsch, Greenberg Glusker Fields Claman Machtinger & Kinsella, Los Angeles, CA, for Roger Ladd, Damian Christopher, Inc., defendants.

Robert W. Hodges, Melodie K. Larsen, J. Larson Jaenicke, Rintala Smoot Jaenicke & Rees, Los Angels, CA, for Qualify King Distributors, Inc., Rite Aid Corp., CVS Corp., defendants.

Jeffrey A. LeVee, Amy A. Stathos, Eric Patrick Enson, Jones Day Reavis & Pogue, Los Angeles, CA, Darryl E. Towell, Jones Day Reavis & Pogue, Irvine, CA, for TSA Distributing Inc., Ken Teepe, defendants.

Luis A. Carrillo, Luis A. Carrillo Law Offices, Montebello, CA, Steven H. Hibbe, Miami, FL, for Trapeza Overseas, Inc., Jose I. Arguelles, defendants.

Richard G. Simon, Richard G. Simon Law Office, San Bernardino, CA, for Farshid Ben-Cohen, defendant.

Eric Shih, Mark R. Bateman, Charles S. Barquist, Mary F. Panetta, Morrison &

Foerster, Los Angeles, CA, for Phar-Mor, Inc., defendant.

Steven M. Perry, Devon A. Gold, Munger Tolles & Olson, Los Angeles, CA, for Randalls Food Markets, Inc., defendant.

Dennis G. Martin, Willmore F. Holbrow, III, Blakely Sokoloff Taylor & Zafman, Los Angeles, CA, John Emmett, John Emmett Law Offices, Dallas, TX, for Nortex Drug Distributors, Inc., defendant.

Roger V. Coven, Paul C. Workman, Holland & Knight, Los Angels, CA, for Dollars Spraay Aerosols, SRL, P. Francalancia, defendants.

Lee I Petersil, Morris Polich & Purdy, Los Angeles, CA, Eric H. Vance, Dale M. Heist, Camille M. Miller, Woodcock Washburn Kurtz, Philadelphia, PA, for Superbox Aerosols, SRL, defendant.

Edmund J. Towle, III, Michael C. Denison, Towle Denison Smith & Tavera, Los Angels, CA, for Tosvar Aerosol, SRL, Paolo Gioia, defendants.

Theresa M. Marchlewski, William E. Ireland, Haight Brown & Bonesteel, for Five stars Realty, Five Stars Mortgage, Inc., Five Star Intern investment Corp., Julio Daniel, Marlen Daniel, defendants.

Stacey L. Jaramillo, Michael J. Mills, Kutak Rock, Newport Beach, CA, for Harp's Food Stores, Inc., defendant.

C–Zors Beauty, Los Angeles, CA, pro se.

Rickey F. Ivie, Ivie McNeill & Wyatt, Los Angels, CA, for Christina's Hair Design, defendant.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS CVS, QUALITY KING, TSA, AND KEN TEEPE'S MOTION TO DISMISS

MORENO, District Judge.

Presently before the Court are Defendants CVS Corporation ("CVS"), Quality King Distributors, Inc. ("Quality King"), T.S.A. Distributing, Inc. ("TSA"), and Ken Teepe's ("Teepe") Motions to Dismiss pursuant to Federal Rule of Procedure 12(b)(6). Having read and considered the moving papers, oppositions, replies, and oral arguments in support thereof, the Court hereby *grants in part* and *denies in part* Defendants' Motion to Dismiss.

I

*Factual Background*

Plaintiff Sebastian International ("Sebastian"), a California corporation, is a designer and distributor of professional hair care products including hair sprays, shampoos, conditioners, coloring gels, and mousse. Sebastian does not distribute its products through retailers. Instead, Sebastian produces its products for use and sale at hair care salons and beauty schools. The salons and schools are contractually obligated to sell Sebastian products only to consumer clientele, and not to other retailers or distributors. Sebastian's more popular products bear a holographic label which is used to identify and track the product.

Despite the contractual limitations imposed on salons, Sebastian products are sold by retailers. This is a result of so-called product diversion, whereby merchandise intended for sale and use in salons is diverted and sold to drug stores and supermarkets. Defendants are alleged to induce authorized distributors and salons to divert Sebastian-brand products and then remove the identifying holographic labels that have been placed on the products by Sebastian. By removing the labels, the identity of the supplying source is concealed.

Besides receiving and selling diverted products, Defendants are alleged to be involved in the distribution and sale of

counterfeit Sebastian products. Sebastian alleges that Defendants remove Sebastian's holographic labels in order to pass off the counterfeit merchandise as genuine Sebastian products. Sebastian has notified certain of the defendants of the presence of counterfeit and diverted Sebastian products, and that defendants should not sell products without the holographic labels. Despite notice, some of the defendants have continued to sell diverted and counterfeit Sebastian products.

T.S.A. Distributing ("TSA") is a California corporation that also does business under the names TSA. Ken Teepe is the President of T.S.A. Sebastian makes few direct factual allegations regarding Teepe or TSA. TSA allegedly received for distribution and sale counterfeit Sebastian products which were imported from Italy. At the end of 1999, TSA was notified by Sebastian that it was suspected of selling counterfeit Sebastian products. According to Sebastian, a few months later counterfeit Sebastian products with TSA shelf tags were found stocked at an Albertson's grocery store. Finally, according to Sebastian, TSA induces distributors and salons to break their contracts with Sebastian and to divert products.

CVS ("CVS") is a Delaware corporation. Sebastian has notified CVS of the existence and substance of its contracts with distributors restricting the sale of its products to salons. In 1997, CVS was also informed that Sebastian had started using holographic labels on its products to prevent diversion and facilitate tracking. According to Sebastian, CVS induces distributors and salons to break their contracts with Sebastian and to divert products. At the end of 1999, Sebastian notified CVS of a scheme to market and warned CVS against selling such products. Despite Sebastian's warning, CVS has allegedly continued to stock and sell counterfeit products.

Defendant Quality King Distributors, Inc. ( "Quality King") is a distributor of consumer products, including hair care products manufactured and sold by Sebastian. In addition to distributors, Quality King also sells diverted Sebastian products through its web-site. Sebastian alleges that Quality King induces distributors of Sebastian products to defraud Sebastian by breaching their agreements only to sell to consumer clientele. In furtherance of its diversion scheme, Sebastian alleges, Quality King created phony distributorships, advanced money to fronts for purchase of diverted Sebastian products, and removed Sebastian's holographic labels, Sebastian further alleges that Quality King received shipments of counterfeit Sebastian products imported from Italy and supplied those products to retailers.

## II

### Motion to Dismiss Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). Moreover, "it is axiomatic that the Motion to Dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Hall v. City of Santa Barbara*, 813 F.2d 198, 201, n. 9 (9th Cir.1986).

The issue on a Motion to Dismiss for failure to state a claim is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir.1997). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the

complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich,* 13 F.3d 1370, 1374 (9th Cir.1994). The court is not required, however, to accept "conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg,* 18 F.3d at 754–55.

■ Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). The notice pleading standard set forth in Rule 8 establishes "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan,* 108 F.3d at 248 (citations omitted). Therefore, a court must not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *U.S. v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981).

■ Where plaintiff's complaint should be dismissed for failure to state a claim, the plaintiff should be given "at least one more chance to amend the complaint" under Fed. R. Civ. Proc. 15(a) before dismissing the action with prejudice. *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir.1991). A plaintiff should be denied leave to amend a complaint, if the court determines that "allegations or other facts consistent with the challenged pleading could not possibly cure the defect." *Schreiber Distributing Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.1986).

### III.

### *Analysis*

Sebastian brings fourteen separate claims arising from the alleged diversion of Sebastian products, the removal of holographic labels from Sebastian products, and the distribution and sale of counterfeit products. Defendants move to dismiss most of the claims brought against them. The Court shall address each claim, and the related arguments, in turn.

### A. Defendants CVS, TSA, Teepe, and Quality King's Motion to Dismiss Sebastian's 15 U.S.C. § 1114 Trademark Infringement and Counterfeiting Claims

All Defendants move to dismiss Sebastian's trademark infringement and counterfeiting claims brought pursuant to 15 U.S.C. § 1114. Defendants argue that Sebastian has failed to allege they have intentionally or knowingly taken part in trademark counterfeiting. In addition, CVS argues that Sebastian has not adequately pled a claim against it because Sebastian has not alleged any specific facts of trademark counterfeiting by CVS.

■ Courts have held that in order to make out a claim for trademark infringement, a plaintiff must plead 1) that the plaintiff owns valid registrations of the trademark; 2) defendant's mark is a counterfeit, imitation, or reproduction; 3) defendant's goods have been used in commerce; 4) such use was without plaintiff's consent; and 5) such use is likely to cause confusion or deceive. *See e.g. E & J Gallo Winery v. Gallo Cattle Co.,* 12 U.S.P.Q.2d 1657, 1670 (E.D.Cal.1989) *aff'd,* 967 F.2d 1280 (9th Cir.1992); *see also* 15 U.S.C. § 1114. The Lanham Act provides for greater damages for counterfeit infringement, thus in order to make out such a claim, plaintiff must allege defendant in-

tentionally used the trademark with knowledge of its counterfeit nature. *See Babbit Electronics, Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1181 (11th Cir.1994); 15 U.S.C. § 1117(b). Sebastian has adequately pled such a claim.

■ . Sebastian has alleged that it owns registered trademarks (*See* Complaint at ¶¶ 36–40); the counterfeit cans included marks identical to its trademarks and were designed to deceive consumers (*See* Complaint at ¶ 73); counterfeit cans supplied by Quality King, TSA and Teepe were used in commerce (*See* Complaint ¶¶ 79, 91); and counterfeit products were sold by CVS (*See* Complaint at ¶ 24). Furthermore, in at least one instance the Ninth Circuit has simply assumed, without analysis, that counterfeit products are likely to confuse. *See Levi Strauss & Co. v. Shilon,* 121 F.3d 1309, 1312 (9th Cir.1997) (Reasoning that "[c]ertainly the counterfeit Levi's tags, labels, and jeans were intended to 'cause confusion, or to cause mistake or to deceive.' "). Sebastian has, therefore, successfully pled the necessary elements of a normal trademark infringement claim against all Defendants. Accordingly, Defendants' Motion to Dismiss the trademark infringement claim is denied.

■ Additionally, Sebastian appears to have sufficiently alleged a claim for trademark counterfeiting against Quality King, TSA and Teepe. Sebastian alleges that all three Defendants knowingly and intentionally took part in trademark counterfeiting. *See* Complaint at ¶ 111. As a factual basis for its allegations against Quality King, Sebastian asserts that on November 18, 1999, it sent Quality King a cease and desist letter containing a detailed descrip-

tion of the counterfeit products it believed Quality King must be distributing. *See* Complaint at ¶ 83; Pl's Opp'n. at Exhibit J. Sebastian further alleges that in January 2000, a retailer routinely supplied by Quality King, stocked counterfeit Sebastian products. *See* Complaint at ¶ 87. Accordingly, the Court finds that Sebastian has adequately pled that Quality King knowingly and intentionally took part in trademark counterfeiting.[1]

Sebastian similarly asserts that TSA and Teepe willfully and intentionally took part in trademark counterfeiting. *See* Complaint at ¶ 111. As a factual basis for Sebastian's allegation, it alleges that TSA and Teepe were sent cease and desist letters containing a detailed description of the counterfeit products they were suspected of distributing (*See* Complaint at ¶ 83), and in March 2000, counterfeit Sebastian products bearing TSA and Teepe shelf tags were on sale at an Albertson's grocery store. *See* Complaint at ¶ 91. The Court therefore finds that Sebastian has adequately pled TSA and Teepe knowingly and intentionally distributed counterfeit goods.

■ As for CVS, the Court finds that Sebastian has not adequately alleged that CVS intentionally and willfully took part in trademark counterfeiting. CVS was added as a Doe defendant and because CVS admits it is a "retailer" (*See* CVS Motion at 3) all allegations against "retailers" apply to CVS. There are no specific allegations that CVS intentionally or knowingly took part in trademark counterfeiting. Therefore, Sebastian has failed to plead a claim of trademark counterfeiting against CVS.

---

1. In addition, the Court rejects Quality King's argument that Sebastian must plead his trademark claim with particularity. The case Defendant cites as support, *Tom Kelley Studios Inc. v. Intl. Collectors Society, Inc.* 44 U.S.P.Q.2d 1799, 1997 WL 598461 (S.D.N.Y. 1997) merely states infringing acts must be "set out with some specificity." *Id.* at 1800, 1997 WL 598461. The Court finds that Sebastian has adequately pled a claim of trademark infringement.

For the reasons above, Defendants Quality King, TSA and Teepe's Motion to Dismiss the trademark counterfeiting claim is denied and Defendant CVS' motion is granted with leave to amend. As previously discussed, Defendants' Motion to Dismiss the trademark infringement claim is denied.

## B. Defendant Quality King, TSA and Teepe's Motion to Dismiss Sebastian's RICO Claims

 Defendants Quality King, TSA and Teepe move to dismiss all three RICO claims brought by Sebastian under 18 U.S.C. §§ 1962(a),(b), and (c). In addition, each claim includes a related conspiracy claim under § 1962(d). In order to state a claim under § 1962(a),(b) and (c), a plaintiff must plead facts establishing 1) that the defendant, 2) through the commission of predicate criminal acts which constitute a pattern of racketeering activity 3) directly or indirectly invests in, or maintains an interest in, or participates in, 4) an enterprise. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 482, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *see also Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (7th Cir.1983) *cert. denied* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684.

Defendants make, in part, different arguments for why the RICO claims should be dismissed. TSA and Teepe argue Sebastian has not pled the third element of investing, maintaining, or participating in an enterprise and has also failed to adequately plead any concrete financial injury. Quality King argues Sebastian has failed to plead a pattern of racketeering activity and a RICO enterprise. In addition, both maintain Sebastian has also failed to plead any predicate criminal acts. The Court addresses each argument in turn.

### 1. Racketeering Activity

The first requirement under RICO is that plaintiff allege the defendant partici-pated in "racketeering activity." The predicate criminal acts that comprise racketeering activity are set out at Section 1961(1). The predicate acts Sebastian has alleged against Defendants are mail fraud ( 18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), criminal copyright infringement (18 U.S.C. § 2319), and trafficking in counterfeit trademarks (18 U.S.C. § 2320).

 To allege a violation of the mail fraud statute, a plaintiff must show that: 1) the defendants formed a scheme or artifice to defraud; 2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and 3) the defendants did so with the specific intent to deceive or defraud. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399–1400 (9th Cir.1986). Furthermore, Rule 9(b) requires that the plaintiff allege its fraud claim with particularity, stating the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation. *Id.* at 1401. The *Schreiber* court held that dismissal of the plaintiff's claims of mail and wire fraud was appropriate because, although the complaint alleged the elements, it did not do so with particularity. The plaintiff's failure to allege use of the mail or telephone was fatal to its claim. *Id.*

 Sebastian's allegations relating to mail fraud allege the required elements, but fail to meet the heightened particularity requirement. With respect to the use of the mail by Defendants, the Complaint refers simply to the use of a common carrier, not the use of the mail. Sebastian has not pled its fraud claims with sufficient particularity. Under *Schreiber*, Sebastian must state the time, place, and specific content of the false representations as well as the identities of the parties. *Id.* Merely asserting that "CAD" used interstate car-

riers on at least six separate occasions within the past year. (*See* Complaint at ¶ 121(c)), fails to identify which particular parties were involved. *Id.; See also Lewis v. Sporck,* 612 F.Supp. 1316, 1324 (N.D.Cal.1985) (mail fraud allegations must include the time, place, and manner of each fraud plus the role of each defendant in each scheme); *see also Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 541 (9th Cir.1989). The Court finds Sebastian has failed to plead a mail fraud predicate act.

 A wire fraud violation consists of: 1) formation of a scheme or artifice to defraud; 2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and 3) specific intent to deceive or defraud. *Schreiber,* 806 F.2d at 1400. As in mail fraud, Rule 9(b) requires that the plaintiff allege a wire fraud claim with particularity, stating the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation. *Id.* at 1401. For the reasons applicable to the mail fraud claim, Sebastian has failed to adequately plead wire fraud.

 However, Sebastian has adequately pled Defendants have trafficked in counterfeit trademarks. Section 2319 provides that one who intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services violates Section 2320(a). *See* 18 U.S.C. § 2319. The government must show that the defendant: 1) trafficked or attempted to traffic; 2) did so intentionally; 3) used a counterfeit mark; and 3) *knew the mark was counterfeit. United States v. Giles,* 213 F.3d 1247, 1249 (10th Cir.2000) (emphasis added). Because this is not a fraud claim, the lower standard of pleading required under Rule 8 applies. *See Lewis v. Sporck,* 612 F.Supp. 1316, 1324 (N.D.Cal. 1985).

Sebastian has alleged that Quality King is a Drug Mart supplier and the counterfeit cans purchased from Drug Mart bear a sticker commonly used by Quality King. *See* Complaint at ¶ 79, ¶ 87. Sebastian also alleges that counterfeit products supplied by TSA and Teepe were sold at an Albertson's grocery store. Complaint at ¶ 90. Sebastian alleges that in November 1999, it sent Defendants a cease and desist letter because they were suspected of potentially selling counterfeit products. *See* Complaint at ¶ 83; Pl's. Opp'n to Quality King Exhibit J. Sebastian alleges that despite that notice, counterfeit products bearing Defendants' markings were found at retail stores months later. *See* Complaint at ¶¶ 90, 91. Taken together, Sebastian's allegations properly plead a predicate act of trafficking in counterfeit goods. The Court finds these allegations constitute predicate criminal acts which satisfy the "racketeering activity" element.[2]

## 2. Pattern of Racketeering Activity

 To establish a "pattern of racketeering activity" under RICO, "the predicate criminal acts [must] be 'related' or 'continuous.'" *Allwaste, Inc. v. Hecht,* 65 F.3d 1523, 1527 (9th Cir.1995), *quoting H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Section 1961(5) defines "pattern of racketeering activity" as at least two acts of "racketeering activity" within ten years. In *Allwaste,* involving an appeal of a Motion to Dismiss, the Ninth Circuit observed that the "continuity" requirement could be satisfied by

---

2. Sebastian also brings a claim for criminal copyright infringement. However, at Section E of this order, the Court finds that Sebastian has failed to plead a copyright infringement claim and therefore concludes Sebastian has failed to plead a criminal copyright claim.

showing what it called open-ended continuity which "is established by showing either that the predicate acts specifically threaten repetition or that they were an ongoing entity's regular way of doing business." *Id.* at 1523.

 The standard for showing open-ended continuity is extremely low. For example, although *Ikuno v. Yip,* 912 F.2d 306 (9th Cir.1990) involved filing of false annual reports only twice in one year, the court concluded continuity was established because "there was no evidence the defendant would have stopped filing false annual reports if the company had not stopped doing business." *Id.* at 309. In *Allwaste,* an appeal of a 12(b)(6) order, the court similarly held that the defendants' "willingness to participate in the kickback scheme and their affirmative misrepresentations ... demonstrate that if they had not been fortuitously interrupted by termination, the predicate acts could have recurred indefinitely." *Allwaste,* 65 F.3d at 1530. The Court finds that Sebastian has sufficiently alleged that Defendants are in a position to continue their counterfeit distribution scheme. As in *Ikuno* and *Allwaste,* there is no evidence here to suggest that Defendants, if able, will not continue to distribute counterfeit Sebastian products. Therefore, Sebastian has adequately alleged a pattern of racketeering activity.

### 3. RICO Enterprise

 RICO defines the term "enterprise" to include 1) any individual, partnership, corporation, association, or other legal entity, and 2) any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4). The Supreme Court has held that a group of individuals associated in fact for wholly unlawful ends could constitute an enter-

prise for purposes of RICO. *See United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). As set out by the Supreme Court, establishing the existence of an associated-in-fact enterprise requires proof 1) of an ongoing organization, formal or informal, and 2) that the various associates function as a continuing unit. *Id.* at 583, 101 S.Ct. 2524. The Ninth Circuit has interpreted *Turkette* as requiring that the enterprise be an entity separate and apart from the pattern of racketeering activity in which it engages. *Chang v. Chen,* 80 F.3d 1293, 1298 (9th Cir.1996).

 In *Chang,* an appeal of a Motion to Dismiss, the court stated that an enterprise must exhibit "some sort of structure ... for the making of decisions, whether it be hierarchical or consensual." *Id.* at 1299. However, a corporation's involvement in a RICO enterprise can satisfy the enterprise element's requirement of a separate structure. *See United States v. Feldman,* 853 F.2d 648, 660 (9th Cir.1988) *cert. denied* 489 U.S. 1030, 109 S.Ct. 1164, 103 L.Ed.2d 222. Quality King is a New York corporation which Sebastian has alleged distributed counterfeit products to various retailers, and was thus involved in the alleged CAD [3] enterprise. The Court finds this satisfies the "separate structure" requirement, and therefore concludes the enterprise element is satisfied.

### 4. Invests, Maintains, Or Participates In A RICO Enterprise

Defendants argue that Sebastian has failed to plead that they invested in a RICO enterprise (§ 1962(a)); maintained an interest in a RICO enterprise (§ 1962(b)); or participated in a RICO enterprise (§ 1962(c)).

---

**3.** CAD, or counterfeit and diversion enterprise, is the name of the alleged RICO enterprise. *See* Complaint at ¶ 93.

### a. Section 1962(a): Injury From Investment or Improper Use of Racketeering Income

In order to state a claim under Section 1962(a), a plaintiff must show injury arising from defendant's investment or improper use of racketeering income. *See Simon v. Value Behavioral Health, Inc.,* 208 F.3d 1073, 1083 (9th Cir.2000). Furthermore, a plaintiff must allege facts, not general conclusory statements, showing it was injured by the investment of racketeering income. *See Nugget Hydroelectric L.P. v. Pacific Gas and Electric Co.,* 981 F.2d 429, 437 (9th Cir.1992), *cert. denied* 508 U.S. 908, 113 S.Ct. 2336, 124 L.Ed.2d 247 (1993). Sebastian's conclusory allegation that it suffered injury from CAD's "ill-gotten" (*see* Complaint at ¶ 118) income is inadequate to state a claim under Section 1962(a) against Defendants, therefore this claim is dismissed with leave to amend.

### b. Section 1962(b): Control or Acquisition Over a RICO Enterprise

To state a claim under § 1962(b) one must show 1) the defendant's activity led to its control or acquisition over a RICO enterprise, (*see Dorian v. Harich Tahoe Development,* 1996 WL 925859 at *3 (N.D.Cal. Jan.16, 1996)), and 2) an injury to plaintiff resulting from defendant's control or acquisition of a RICO enterprise. *See U.S. Concord, Inc. v. Harris Graphics Corp.,* 757 F.Supp. 1053, 1060 (N.D.Cal. 1991). Sebastian has failed to allege in its Complaint that Defendants Quality King, TSA or Teepe have controlled or acquired CAD, which resulted in injury to Sebastian. Accordingly Sebastian's § 1962(b) claim is dismissed with leave to amend.

### c. Section 1962(c): Participated In Conduct of Enterprise

Section 1962(c) prohibits participating in the conduct of a RICO enterprise through a pattern of racketeering activity. *See* 18 U.S.C. § 1962(c). The Court finds that Sebastian has adequately pled that Quality King, TSA and Teepe are associated with CAD (*see* Complaint at ¶ 93) and have participated in a pattern of racketeering activity. In addition, Defendants argue Sebastian's § 1962(c) claim must be dismissed for failing to allege any concrete financial loss resulting from the racketeering activity. *See Oscar v. University Students Co-operative Assoc.,* 965 F.2d 783, 785 (9th Cir.1992). The Court finds otherwise. Sebastian has alleged Quality King, TSA and Teepe have distributed counterfeit goods (*See* Complaint at ¶¶ 72, 90), and it has alleged specific economic harm resulting from lost sales and increased costs (*See* Complaint at ¶ 122). The Court therefore denies Quality King, TSA and Teepe's Motion to Dismiss Sebastian's § 1962(c) claim.

### 5. Sebastian's Conspiracy Claims

To state a claim for conspiracy to violate RICO, "the complaint must allege some factual basis for the finding of a conscious agreement among the defendants." *Hecht v. Commerce Clearing House,* 897 F.2d 21, 26 n. 4 (2nd Cir.1990). The Court has determined that Sebastian has alleged injury caused by Defendants' predicate acts; namely trafficking in counterfeit goods. Moreover, Sebastian has adequately alleged agreement by Defendants' to further the alleged conspiracy. *See* Complaint at ¶ 33. We find that these requirements have been satisfied, and Sebastian's conspiracy claim may stand.

In conclusion, the Court finds that Sebastian has solely pled the predicate criminal act of trafficking in counterfeit goods. In addition, Sebastian's Section 1962(a) and (b) claims, and corresponding conspiracy claims are dismissed with leave to amend. Defendants' Motion to Dismiss Sebastian's Section 1962(c) and corresponding conspiracy claim is denied.

## C. Defendants' Motion to Dismiss Sebastian's 15 U.S.C. § 1125(a) False Designation Claim

Defendants all move to dismiss Sebastian's false designation claim because the Complaint fails to adequately state facts in support of its claim. CVS, in particular, argues that Sebastian has pled absolutely no facts alleging infringement of Section 1125(a).

Section 1125(a) of the Lanham Act provides a cause of action against anyone who 1) uses in commerce, 2) any false designation of origin which would 3) likely cause confusion with another's goods or services. *See* 15 U.S.C. § 1125(a); *see also Fuddruckers v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842–46 (9th Cir.1987). In addition, however, in ruling on a 12(b)(6) motion, one district court has held that the analysis applicable to Section 1125(a) is the same as that for Section 1114(1)(a). *See Northern Light Technology v. Northern Lights Club*, 97 F.Supp.2d 96, 120 (D.Mass.2000) ("where the basic allegation is trademark infringement, the evaluation of the Plaintiff's 15 U.S.C. s. 1114(1) claim suffices to establish likelihood of success on [the 1125(a) ] claim."). This Court agrees with the Massachusetts District Court's reasoning. *See also Columbia Ins. Co. v. Seescandy.Com*, 185 F.R.D. 573, 580 (N.D.Cal.1999). Because the Court has already found that Sebastian has adequately pled facts to make out a normal trademark infringement claim under § 1114(1)(a) against all Defendants (*see supra* at Section A), the Court finds that Sebastian has also adequately pled a claim under § 1125(a), therefore Defendants' Motion to Dismiss is denied.

In a false designation claim, unlike a trademark counterfeiting claim, intent or knowledge is not a required element. *See* 15 U.S.C. § 1125(a); *see* 15 U.S.C. § 1117(b). Accordingly, the Court finds that Plaintiff has also adequately pled a claim of false designation against CVS by alleging "Retailers," including CVS, sell counterfeit goods. CVS, as a "Retailer," is alleged to have sold counterfeit Sebastian products indistinguishable from authentic products, thus causing financial harm to Sebastian.[4] *See* Complaint at ¶¶ 24, 135, 137.

For all the reasons above, Defendants Quality King, CVS, TSA and Teepe's Motion to Dismiss is denied.

## D. Defendants' Motion to Dismiss 15 U.S.C. § 1125 Trademark Dilution Claim

All Defendants move to dismiss Sebastian's trademark dilution claim, contending that Sebastian has failed to plead sufficient facts to state a claim for trademark dilution. In addition, TSA and Teepe argue that Sebastian has failed to plead a necessary element—that they made use of a junior mark.

Dilution itself is defined as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of 1) competition between the owner of the famous mark and other parties, or 2) likelihood of confusion, mistake or deception." 15 U.S.C. § 1127.

To prove a violation of the Federal Trademark Dilution Act, a plaintiff must show that 1) the mark is famous; 2) the defendant is making a commercial use of the mark in commerce; 3) the defendant's use began after the mark became famous;

---

4. The Court assumes that because Sebastian named all of the "Retailers" as defendants to the false designation claim, CVS is also a defendant to this claim. The Court further assumes this to be case for all other claims in which the parties collectively defined as "Retailers" are all named as defendants.

and 4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services. *Panavision v. Toeppen,* 141 F.3d 1316, 1324 (9th Cir.1998) (finding that registering plaintiff's trademark as a domain name diluted the mark); *See also Cairns v. Franklin Mint Co.,* 24 F.Supp.2d 1013 (C.D.Cal. 1998) (applying the above four factors to deny defendant's plaintiff's dilution claim). The second element "use of the mark" demonstrates that a trademark dilution claim does not depend on use of a junior mark.

■ Sebastian has alleged that Quality King, CVS, TSA and Teepe were involved in the distribution or sale of inferior counterfeit Sebastian products after Sebastian's products were already famous. *See* Complaint at ¶¶ 79, 87, 24, 72, 91. The Court therefore finds Sebastian has adequately pled a claim for trademark dilution and Defendants' motion is accordingly denied.

**E. Defendants' Motion to Dismiss Sebastian's 17 U.S.C. § 501 Copyright Infringement Claim**

The Complaint alleges that Defendants have infringed Sebastian's copyrights due to "unauthorized copying of" the copyrighted label on Sebastian products. *See* Complaint at ¶ 150. Defendants contend they never copied Sebastian's label, and there appear to be no allegations that they have done so.

■ To make out a prima facie case for copyright infringement, a plaintiff must show 1) ownership of a valid copyright and 2) copying of the expression protected by the copyright. *See Triad Systems Corp. v. Southeastern Express Co.,* 64 F.3d 1330, 1335 (9th Cir.1995); *see also* 4 Nimmer on

Copyright § 13.01. It is certainly true that Sebastian has a valid copyright in its products. *See* Complaint Exhibits 10 & 11. However, Sebastian has limited its claim for copyright infringement to improper copying and not distribution. Because Sebastian has failed to allege any improper copying by Defendants, Sebastian's copyright infringement claim against Defendants must be dismissed with leave to amend.

**F. Defendants' Motion to Dismiss Sebastian's 19 U.S.C. § 1526 Tariff Act Claim**

Sebastian alleges that the defendants to the Tariff Act claim produced and imported counterfeit products bearing the registered Sebastian trademark. *See* Complaint at ¶ 157. Defendants move to dismiss this claim because there are no allegations in the Complaint that Defendants either produced or imported counterfeit goods.

■ Section 1526 of the Tariff Act of 1930 prohibits the unauthorized importation of goods bearing a United States trademark.[5] However, the Tariff Act also imposes liability on "[a]ny person dealing in" trademark-protected merchandise which is imported into the United States in violation of § 1526(a). *See* 19 U.S.C. § 1526(c). Liability under this statute is not limited to the importer. *See e.g. Houbigant, Inc. v. ACB Mercantile, Inc.,* 914 F.Supp. 964, 982 (S.D.N.Y.1995) (denying defendants' motion to dismiss observing "The complaint alleges that the [ ] defendants were responsible for and beneficiaries of an illegal scheme to sell counterfeit goods" even though they did not actually import the goods). Sebastian has alleged that Defendants distributed or sold coun-

---

**5.** That section provides in relevant part: "It shall be unlawful to import into the United States any merchandise of foreign manufac- ture if such merchandise ... bears a trademark owned by ... a [United States] corporation." 19 U.S.C. § 1526.

terfeit products allegedly imported from Italy. *See* Complaint at ¶ 24, 72.

However, as pled, Sebastian's Tariff Act claim rests on the production and importation of counterfeit goods, not on distribution. *See* Complaint at ¶ 157. Accordingly, the Court dismisses Sebastian's Tariff Act claim with leave to amend.

### G. Defendants' Motion to Dismiss Sebastian's Common Law Unfair Competition and California Business and Practices § 17200 Claims

Defendants also move to dismiss Sebastian's claims brought under the common law theory of unfair competition and California Business and Practices Code § 17200. These claims target three separate activities: 1) the sale and distribution of counterfeit goods, 2) the sale and distribution of diverted Sebastian products, and 3) the removal of holographic labels from Sebastian products.

#### 1. Sale and Distribution of Counterfeit Goods

The Court will first address the sale and distribution of counterfeit goods. *Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir.1994) involved an appeal of a summary judgment in which the court treated the unfair competition and Section 17200 claims as equivalent to Lanham Act claims, observing that "[t]his Circuit has consistently held that state common law claims of unfair competition and actions under the Lanham Act are 'substantially congruent.'" *Id.* at 1262–63 (quoting *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir.1991)). Because Sebastian has adequately pled a claim for trademark infringement against all Defendants, as discussed above at Section A, the Court

finds it has also adequately pled a claim for Section 17200 and unfair competition. Defendants' Motion to Dismiss Sebastian's Section 17200 and common law unfair competition claims is therefore denied.[6]

#### 2. Sale and Distribution of Diverted Goods

Sebastian also brings claims under Section 17200 and unfair competition arising from the sale or distribution of diverted Sebastian products. Defendants argue that under the "first sale doctrine" Sebastian's Section 17200 and common law unfair competition claims must be dismissed. Sebastian argues, however, that in order to assert the "first sale" defense, the party must be able to trace every product it sold, back to the original sale. As support, Sebastian cites a Fifth Circuit case, *American International Pictures v. Foreman*, 576 F.2d 661, 665 (5th Cir.1978) and an Eastern District of New York case *Microsoft Corp. v. Harmony Computers and Electronics, Inc.*, 846 F.Supp. 208, 212 (E.D.N.Y.1994), which discuss the "first sale doctrine" with reference to copyright claims and not section 17200 or common law unfair competition.

More on point, are two Ninth Circuit cases that discuss the "first sale doctrine." In *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073 (9th Cir. 1995), *cert. denied*, 516 U.S. 914, 116 S.Ct. 302, 133 L.Ed.2d 207 (1995), the court held that "the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product." *Id.* at 1074 (affirming dismissal of plaintiff's Lanham Act claim pursuant to first sale doctrine). Moreover, the court in *Denbicare U.S.A. Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143 (9th Cir.1996)

---

6. Defendants have also moved the Court to dismiss the state law claims pursuant to 28 U.S.C. § 1367(c)(3); however these motions are moot as the Court has not dismissed all of Sebastian's federal trademark claims.

*cert. denied* 519 U.S. 873, 117 S.Ct. 190, 136 L.Ed.2d 128 held that the "first sale doctrine" also bars § 17200 and state unfair competition claims as they are substantially congruent to trademark claims. *Id.* at 1152. In neither *Sebastian* nor *Denbicare* did the Ninth Circuit specifically address whether defendants carried the burden of showing a chain of title in order to assert the "first sale doctrine."

However, in *Sebastian* the court did state that, "Longs presumably purchases Sebastian products from a salon or distributor who sells the product to Longs in violation of its agreement with Sebastian." *Id.* at 1074. This language demonstrates clear uncertainty as to the chain of title and the Court views this language as support for the conclusion that in the Ninth Circuit, the defendant need not show a chain of title to invoke the "first sale doctrine" in defense of trademark and (substantially congruent) unfair competition claims. Accordingly, Sebastian's section 17200 and common law unfair competition claims regarding the sale of diverted goods are hereby dismissed with leave to amend.

### 3. Removal of Holographic Labels

Finally, Sebastian brings a claim for Section 17200 violations and common law unfair competition arising from the removal of holographic labels from Sebastian products. This claim is predicated on the fact that removal of manufacturer identification codes and knowing possession of products without such codes is a violation of Section 537e of the California Penal Code.[7] Sebastian argues that the violation of the Penal Code is tantamount to an unfair business practice.

In its reply, one Defendant argues that *John Paul Mitchell Systems v. Randalls Food Markets, Inc.*, 17 S.W.3d 721 (Tex. App.2000) vitiates Sebastian's claim. In *Mitchell*, a hair care products manufacturer sued a retail store claiming in part unfair competition and trademark infringement. Mitchell, like Sebastian, sells its products to salons that are contractually bound not to re-sell products to retailers. *See* 17 S.W.3d at 727. Also like Sebastian, Mitchell tracks its products by imprinting them with both a batch code and an ultraviolet code. *Id.* The trial court found that the defendants knowingly possessed Mitchell products with the codes removed. *Id.* at 732. On appeal Mitchell argued that because defendants' actions violated section 31.11 of the Texas Penal Code, which criminalizes tampering with identification numbers, the court should enjoin defendants from selling Mitchell products.

The Texas Court of Appeals disagreed with Mitchell's argument. It found that the purpose of the Texas Penal Code was to deter theft. *Id.* at 733 ("the legislature criminalized the removal of permanent identification markers because this conduct facilitates theft."). Consequently, it is an affirmative defense under the Texas statute, that the defendant is the legitimate "owner" of the goods. The Mitchell products, although diverted, were validly purchased, making the defendants the "owners," and therefore within the affirmative defense. Because the defendants were not within the proscription of the penal code, the court decided not to grant injunctive relief.

■ *Mitchell* is distinguishable from the present case because the Texas statute

---

**7.** Section 537e states in relevant part: "(a) Any person who knowingly buys, sells, receives, disposes of, conceals, or has in his or her possession any personal property from which the manufacturer's serial number, identification number ... or any other distinguishing number or identification mark has been removed, defaced, covered, altered, or destroyed, is guilty of a public offense ...''

substantively differs from California's Penal Code § 537e. Under Section 537e there is no affirmative defense afforded to "owners" of the goods. Diverting goods without the manufacturer's identification labels is not a crime in Texas, but it *is* a crime in California. Thus, unlike the defendants in *Mitchell*, Defendants are within the statutory proscription, rendering *Mitchell* entirely distinguishable.

Also, unlike the Texas statute, Penal Code § 537e has a broader purpose than solely to deter theft. One California court has opined that the statute also ensures that defective products can be recalled, products liability cases may be prosecuted or defended, and manufacturers can track their products downstream. *See People v. Superior Court of Los Angeles County (Shayan)*, 21 Cal.App.4th 621, 627, 26 Cal. Rptr.2d 173 (1994). Sebastian alleges its holographic labels are intended to serve all these purposes. *See* Complaint at ¶ 54. Thus, the Court finds the California legislature has expressed, through § 537e, a strong interest in ensuring that products, such as Sebastian's, remain identifiable downstream.

█ In California "unfair competition" is defined as any unlawful business practice. *Committee on Children's Television v. General Foods Corp.*, 35 Cal.3d 197, 209–10, 197 Cal.Rptr. 783, 673 P.2d 660 (1983). Last year the California Supreme Court explained that "unlawful business practices" are determined by looking at "violations of other laws." *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal. Rptr.2d 548, 973 P.2d 527 (1999). Accordingly, the Court concludes that Defendants' alleged removal of Sebastian identification codes or knowing possession of

such products, a crime in California, constitutes an unfair business practice.

For the reasons stated above, Defendants' Motion to Dismiss Sebastian's claims as applied to the removal of Sebastian holographic labels is denied.

## H. Defendants' Motion to Dismiss Sebastian's Intentional Interference With Contractual Relations and Interference With Prospective Economic Advantage Claims

Defendants contend that Sebastian has failed to plead sufficient facts in support of its claims for intentional interference with contractual relationship and prospective economic advantage. In response, Sebastian argues first that it has pled it has contracts with each of its distributors and salons under which they agree not to resell Sebastian products. *See* Complaint at ¶ 45. Second, Defendants have received notice regarding the contractual relations with its salons. *See* Complaint at ¶¶ 71, 171. Third, Sebastian has also alleged that Defendants have interfered with Sebastian's contractual relations which has caused breaches with its distributors and salons. *See* Complaint at ¶¶ 51, 71, 171.[8]

█ In order to state a claim for intentional interference with contractual relations a plaintiff must plead 1) a valid contract between plaintiff and a third party exists; 2) the defendant had knowledge of that contract; 3) the defendant acted intentionally to induce a breach of the contractual relationship; 4) the relationship was breached or disrupted; and 5) plaintiff suffered damage as a result thereof. *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126, 270 Cal.Rptr. 1, 791 P.2d 587 (1990). A claim for intentional interference with economic

8. The court finds that the additional "wrongful act," as required by *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 393, 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995) is easily satisfied by Quality King's alleged trademark infringement claims.

advantage varies in that a prospective contract or economic advantage must be alleged in lieu of an existing contract. *Id.* at 1126 n. 2, 270 Cal.Rptr. 1, 791 P.2d 587.

The Court finds that, Sebastian has adequately pled a claim for intentional interference with contractual relationships. *See* Complaint at ¶¶ 51, 71. However, Sebastian has failed to allege any facts showing that a prospective contract or economic advantage has been disrupted. In its complaint, Sebastian solely references existing contracts with its distributors and salons *See* Complaint at ¶¶ 44–51, 71. Thus, Defendants' Motion to Dismiss Sebastian's claim for intentional interference with contractual relations is denied. However, Sebastian's claim for intentional interference with prospective advantage is dismissed with leave to amend.

### I. Defendants' Motion to Dismiss Sebastian's Unjust Enrichment Claim

Defendants move to dismiss Sebastian's unjust enrichment claim because, they argue, Sebastian has failed to show that defendant has benefitted from ill-gotten gain. However, Sebastian maintains it has alleged that Defendants have distributed or sold counterfeit products (*see* Complaint at ¶ 24, 72, 87, 90) and Defendants have benefitted, to Sebastian's detriment, from sales of counterfeit Sebastian hair spray. *See* Complaint at ¶¶ 183, 184.

 In order to make out a claim for unjust enrichment in California, Plaintiff must show the defendant received unjust benefit at the expense of the plaintiff. *See First Nationwide Savings v. Perry,* 11 Cal.App.4th 1657, 1662–63, 15 Cal.Rptr.2d 173 (1992). Sebastian has met that burden against the Defendants by alleging they benefitted from the sale of counterfeit Se-

bastian products. *See* Complaint at ¶¶ 183, 184. For that reason, Defendants' Motion to Dismiss must be denied.

### J. Defendants' Motion to Dismiss Sebastian's Equitable Servitudes Claim

Sebastian seeks injunctive relief for Defendants' violation of an equitable servitude allegedly created in Sebastian's products. Sebastian relies solely upon *Nadell and Co. v. Grasso,* 175 Cal.App.2d 420, 346 P.2d 505 (1959) for the proposition that Sebastian's exclusive contractual distribution arrangement creates restrictions that run with the goods and which may be enforced in equity against subsequent purchasers like Quality King. However, *Nadell* is an isolated, 1959 appellate case that does not appear to have ever been cited to as good law.[9] Also, the *Nadell* court observed that trial courts were reluctant to find and enforce equitable servitudes in chattels and that the issue it decided was one of first impression at the appellate level. *Nadell,* 175 Cal.App.2d at 424, 346 P.2d 505.

 In addition, the Court finds that the "first sale" doctrine enunciated in *Denbicare U.S.A., Inc. v. Toys "R" Us, Inc.,* 84 F.3d 1143 (9th Cir.1996) *cert. denied* 519 U.S. 873, 117 S.Ct. 190, 136 L.Ed.2d 128 bars Sebastian's claim for equitable servitude. *Denbicare* held that state common law claims, such as unfair competition based on a third party's breach of a sale restriction, may be foreclosed because conditions placed on a first sale do not run with the goods. *Denbicare,* 84 F.3d at 1152. Sebastian's common law claim for equitable servitude is likewise barred.

---

9. Sebastian attempts to buttress its reliance on *Nadell and Co. v. Grasso* by pointing out that the case was cited with implicit approval in *Hicks v. Clayton,* 67 Cal.App.3d 251, 136 Cal.Rptr. 512 (1977). However, the *Hicks* court's approval of *Nadell* concerned the issue of when legal remedies oust equitable remedies, a matter unrelated to equitable servitudes. *Hicks,* 67 Cal.App.3d at 264, 136 Cal. Rptr. 512.

However, even if the "first sale" doctrine does not bar Sebastian's equitable servitude claim, the specific facts of Sebastian's case render *Nadell* inapplicable. In *Nadell*, the plaintiff contracted with a railroad to purchase a shipment of Kraft fruit salad. The containers bearing the Kraft name had been damaged in transit and, as a condition of the sale, the plaintiff agreed to repackage the fruit salad before selling it to consumers. *Nadell*, 175 Cal.App.2d at 423, 346 P.2d 505. When the defendant, a subsequent purchaser, refused to abide by the condition of the first sale, a portion of the visibly damaged Kraft containers was actually delivered to a retailer for sale to consumers. *Id.* Thus, the defendant's failure to abide by the restrictions of the first sale resulted in the retail sale of physically damaged products bearing the Kraft name. In contrast, Sebastian does not allege Defendants sold Sebastian goods of inferior quality. The diverted Sebastian products at issue were never alleged to have been physically damaged or unfit for sale, rendering *Nadell* distinguishable on its facts.

For all the reasons above, the Court grants Defendants' Motion to Dismiss the equitable servitude claim with leave to amend.[10]

## IV.

### *Conclusion*

For all the reasons set forth above, the Court hereby rules as follows.

**Regarding the trademark § 1114 claims:** the Court denies Defendants' Motion to Dismiss the trademark infringement claim. With respect to the trademark counterfeiting claim, the Court grants CVS' Motion to Dismiss with leave

to amend and denies the remaining Defendants' Motion to Dismiss.

**Regarding the RICO claims:** the Court dismisses Sebastian's § 1962(a) and (b) claims and related conspiracy claims against Defendants Quality King, TSA and Teepe with leave to amend. The Court denies Defendants Quality King, TSA and Teepe's Motion to Dismiss the § 1962(c) claim and related conspiracy claim.

**Regarding the false designation claim:** the Court denies Defendants' Motion to Dismiss.

**Regarding the trademark dilution claim:** the Court denies Defendants' Motion to Dismiss.

**Regarding the copyright claim:** the Court dismisses the claim against all Defendants with leave to amend.

**Regarding the Tariff Act claim:** The Court dismisses the claim against all Defendants with leave to amend.

**Regarding the common law unfair competition and California Business and Practices Code § 17200 claims:** With respect to the sale and distribution of counterfeit goods, the Court denies Defendants' Motion to Dismiss. With respect to the sale and distribution of diverted goods, the Court grants Defendants' Motion to Dismiss with leave to amend. With respect to the removal of holographic labels, and subsequent knowing possession of such products, the Court denies Defendants' Motion to Dismiss.

**Regarding the interference with contractual relations and interference with prospective economic relationship:** The Court denies Defendants' Motion to Dismiss the interference with contractual relations claim. The Court dismisses the

---

10. TSA and Teepe's reply papers cite California Commercial Code § 2403 as evidence that *Nadell* 's reasoning has been superseded. However, the Court is unsure that a claim in

equity is necessarily affected by the Commercial Code, but does not rule on that issue at this time.

interference with prospective economic relations claim against all Defendants with leave to amend.

**Regarding the unjust enrichment claim:** The Court denies Defendants' Motion to Dismiss.

**Regarding the equitable servitudes claim:** The Court dismisses the claim against all Defendants with leave to amend.

IT IS SO ORDERED.