PAYLESS SHOESOURCE, INC.,
Plaintiff–Appellee,

v.

REEBOK INTERNATIONAL LIMITED
and Reebok International Ltd.,
Defendants–Appellants.

No. 93–1035.

United States Court of Appeals,
Federal Circuit.

July 20, 1993.

Stephen J. Horace, The May Dept. Store Co., of St. Louis, MO, argued for plaintiff-appellee. With him on the brief was Seth D. Greenstein, McDermott, Will & Emery, of Washington, DC.

William M. Ried, Lewin & Laytin, P.C., New York City, argued for defendants-appellants and David K.S. Cornwell, Sterne, Kessler, Goldstein & Fox, of Washington, DC, argued for defendants-appellants.

Before MAYER, LOURIE, and RADER, Circuit Judges.

LOURIE, Circuit Judge.

Reebok International Limited and Reebok International Ltd. ("Reebok") appeal from the order of the United States District Court for the District of Kansas denying Reebok's motion for a preliminary injunction enjoining Payless Shoesource, Inc. from infringing Reebok's trademarks, trade dress, and design patents. *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 804 F.Supp. 206, 25 USPQ2d 1130 (D.Kan.1992). We vacate and remand.

## BACKGROUND

Payless is a footwear retailer of low and medium priced shoes sold through a nationwide chain of self-service shoe stores. Its shoes bear private "unbranded" labels and are only available for sale in Payless stores. Reebok is a manufacturer and retailer of brand name REEBOK footwear sold in the United States and throughout the world in athletic footwear stores, sporting goods stores, and department stores. On August 25, 1992, Payless filed a complaint for declaratory judgment against Reebok in which Payless sought a declaration that its footwear did not infringe Reebok's trademarks, trade dress, or design patents. Reebok filed a counterclaim alleging trademark infringement under 15 U.S.C. § 1114(1) (1988), federal unfair competition[1] and trade dress infringement under 15 U.S.C. § 1125(a) (1988), patent infringement under 35 U.S.C. § 271 (1988), and unfair competition under Kansas state common law.

Reebok's counterclaims were directed to five models of shoes sold by Payless: ProWings HK 48, ProWings 9620, ProWings 9153, XJ 900, and Attack Force 9160. Reebok claimed that (1) the HK 48 model infringed Reebok's STARCREST and

---

1. Reebok claimed that Payless had engaged in false designation of origin and false description and representation in the sale of its products.

STRIPECHECK trademarks and the trade dress of its "Freestyle" shoe; (2) the 9620 model infringed Reebok's STARCREST mark and the trade dress of its "Princess" shoe; (3) the 9153 model infringed the trade dress of Reebok's "THE PUMP" shoe and U.S. Patent Des. 307,508; (4) the XJ 900 model infringed the trade dress of Reebok's "Omni Zone II" shoe and U.S. Patent Des. 326,353; and (5) the Attack Force 9160 model infringed the trade dress of Reebok's "Blacktop the Boulevard" shoe and U.S. Patent Des. 325,809.

Reebok also filed a motion for a preliminary injunction enjoining Payless from "purchasing, importing, distributing or selling shoes infringing Reebok's federally registered trademarks or trade dress or from making, using or selling shoes infringing Reebok's U.S. design patents." 804 F.Supp. at 208, 25 USPQ2d at 1131 (quotation omitted). An evidentiary hearing was held by the district court and the motion was denied on October 2, 1992.

Concerning Reebok's trademark infringement claim, the district court determined as a preliminary matter that the STRIPE-CHECK and STARCREST marks were valid, and it thus confined the bulk of its analysis to the likelihood of confusion between the competing products at issue. Although the court found that the Reebok and Payless shoes were "similar in appearance," it determined that other factors "weigh[ed] strongly against the likelihood that a consumer will be confused when confronted in the marketplace with the Reebok and the Payless shoes." *Id.* at 212, 25 USPQ2d at 1135. Thus, the court concluded that Reebok failed to establish that it was "substantially likely" to succeed on the merits of its trademark infringement claim.

The district court also concluded that Reebok did not show a substantial likelihood of success on the merits of its federal unfair competition claims.[2] With respect to Reebok's contention that Payless had designed a "knock-off" Reebok shoe in violation of section 43(a) of the Lanham Act, the court determined that the evidence was insufficient to

show that Payless had improperly passed off its shoes as Reebok's. Additionally, the court found that its prior likelihood of confusion analysis was also applicable to and dispositive of Reebok's trade dress claim.[3]

As to the design patent infringement claim, the district court applied the test set forth in *Gorham Co. v. White,* 81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1871). Although the court acknowledged some similarity between Payless' accused shoes and the design patents at issue, it also found "major differences." 804 F.Supp. at 215, 25 USPQ2d at 1137. The court determined that "[t]he similarities between the shoes in question [were] overshadowed by the many differences," *id.,* and thus concluded that Reebok had not shown a reasonable likelihood of success on the merits of its patent infringement claim.

Upon weighing the other preliminary injunction factors, including the balance of harms and the public interest, the district court concluded that "a preliminary injunction is ill-advised at this time" and denied Reebok's motion. *Id.* at 216, 25 USPQ2d at 1138. Reebok appealed to this court. We have jurisdiction over the appeal pursuant to 28 U.S.C. §§ 1292 and 1295 (1988).

## DISCUSSION

### A. Choice of Law

As a general rule, we review procedural matters under the law of the regional circuit in which the district court sits. *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1574–75, 223 USPQ 465, 471 (Fed. Cir.1984). Additionally, we defer to the law of the regional circuit when addressing substantive legal issues over which we do not have exclusive subject matter jurisdiction. *See U.S. Philips Corp. v. Windmere Corp.,* 861 F.2d 695, 702, 8 USPQ2d 1885, 1890 (Fed.Cir.1988), *cert. denied,* 490 U.S. 1068, 109 S.Ct. 2070, 104 L.Ed.2d 635 (1989). Here, we defer to the law of the Tenth Circuit in reviewing the district court's deci-

**2.** Accordingly, the district court also found that Reebok had not met its burden with respect to its state common law unfair competition claim.

**3.** Hence, the district court did not reach the other elements of the trade dress claim, including nonfunctionality and secondary meaning/inherent distinctiveness.

sion to deny Reebok's motion for preliminary injunctive relief from alleged trademark and trade dress infringement.

 Under Tenth Circuit law, the denial of a preliminary injunction is reviewed to determine whether "the trial court's action was clearly erroneous or constitutes an abuse of discretion." *Otero Savs. & Loan Ass'n v. Federal Reserve Bank,* 665 F.2d 275, 276 (10th Cir.1981). A moving party seeking preliminary injunctive relief in the Tenth Circuit must establish: (1) a substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless an injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that an injunction, if granted, would not be adverse to the public interest. *Id.* at 278.

 With regard to substantive issues within our exclusive appellate jurisdiction, including patent law, we apply our own law. *See Braun Inc. v. Dynamics Corp. of Am.,* 975 F.2d 815, 819, 24 USPQ2d 1121, 1124 (Fed.Cir.1992). We will not disturb a denial of a preliminary injunction under 35 U.S.C. § 283 (1988) unless a district court "abused its discretion, committed an error of law, or seriously misjudged the evidence." *Smith Int'l, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1579, 219 USPQ 686, 691 (Fed.Cir.), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). In deciding whether a moving party is entitled to preliminary injunctive relief under section 283, a district court must consider (1) whether the movant has sufficiently established a reasonable likelihood of success on the merits; (2) whether the movant would suffer irreparable harm if an injunction were not granted; (3) whether the balance of hardships tips in the movant's favor; and (4) the impact, if any, of an injunction on the public interest. *Hybritech Inc. v. Abbott Lab.,* 849 F.2d 1446, 1451, 7 USPQ2d 1191, 1195 (Fed.Cir.1988).

 Having stated those rules, we are mindful of the "heavy burden" that an appellant has in overcoming the denial of a motion for a preliminary injunction. *Smith Int'l,* 718 F.2d at 1579, 219 USPQ at 691.

## B. *Trademark and Trade Dress Infringement*

 The critical inquiry concerning a claim under section 32 or section 43(a) of the Lanham Act is whether a party's use of a mark is likely to confuse customers as to the source of a product. 15 U.S.C. §§ 1114(1), 1125(a). The Tenth Circuit treats the issue of likelihood of confusion as a question of fact subject to review under the clearly erroneous standard. *See, e.g., Amoco Oil Co. v. Rainbow Snow, Inc.,* 809 F.2d 656, 661, 1 USPQ2d 1403, 1407 (10th Cir.1987). The Tenth Circuit has identified a number of factors relevant to determining whether there is a likelihood of confusion, including " '(a) the degree of similarity between the designation and the trade-mark . . .; (b) the intent of the actor in adopting the designation; (c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other; (d) the degree of care likely to be exercised by purchasers.' " *Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 940, 221 USPQ 209, 215 (10th Cir.1983) (quoting Restatement of Torts § 729 (1938)). This list is not exhaustive and the factors enumerated therein are interrelated, with no one factor being dispositive. *Jordache Enters., Inc. v. Hogg Wyld. Ltd.,* 828 F.2d 1482, 1484, 4 USPQ2d 1216, 1218 (10th Cir.1987).

In reaching its determination concerning trademark infringement, the district court focused on the likelihood of confusion between Reebok's and Payless' shoes in the marketplace. Particularly persuasive to the district court were what it considered "vast" differences in the manner of marketing and the channels of trade employed by the two companies. For example, the court found that Payless and Reebok shoes were never sold in the same stores, that Payless shoes were only available in Payless stores, that Payless shoes generally sell for much less than Reebok shoes, and that the self-service nature of Payless stores requires customers to become highly knowledgeable concerning the selection of Payless shoes. Additionally,

the court found that the degree of care consumers exercise in purchasing athletic footwear further lessens the likelihood of confusion.

 However, by exclusively focusing on confusion at the point of sale, the district court effectively disregarded Reebok's argument relating to "post-sale confusion." Reebok contended that such confusion occurs, for example, when a consumer observes someone wearing a pair of Payless accused shoes and believes that the shoes are Reebok's. As a consequence, the consumer may attribute any perceived inferior quality of Payless shoes to Reebok, thus damaging Reebok's reputation and image. The district court rejected that contention because the Tenth Circuit had not adopted the theory of post-sale confusion.[4] We agree with Reebok that the district court abused its discretion in failing to adequately consider the extent of such post-sale confusion.

Section 32 of the Lanham Act was amended in 1962 to include confusion of nonpurchasers as well as direct purchasers by striking out language limiting its scope to confusion of "purchasers as to the source of origin of such goods or services." Pub.L. No. 87–772, 76 Stat. 769, 773 (1962). As a result, several of our sister circuits have recognized that an action for trademark infringement may be based on confusion of consumers other than direct purchasers, including observers of those wearing an accused article. *See, e.g., Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 222, 12 USPQ2d 1808, 1813 (1st Cir.1989) ("[P]oint of sale confusion [is] not the only issue."); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872, 230 USPQ 831, 835 (2d Cir.1986) ("[I]t is ... clear that post-sale confusion ... is actionable under the Lanham Act."); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148, 2 USPQ2d 1444, 1445–46 (4th Cir.1987) (confusion in "after sale context" can harm plaintiff's reputation); *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 221, 226 USPQ 836, 840 (5th Cir.1985) ("[Plaintiff]

need not prove confusion on the part of actual customers."); *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822, 208 USPQ 713, 718 (9th Cir.1980) (mitigation of point of sale confusion does not obviate confusion by *prospective* purchasers); *United States v. Torkington*, 812 F.2d 1347, 1352, 2 USPQ2d 1166, 1170 (11th Cir.1987) ("[T]he likely to confuse test is satisfied when potential customers ... would be likely to be confused should they encounter the [accused products] in a post-sale context—for example, in a direct purchaser's possession.").

Although, as the district court pointed out, the Tenth Circuit apparently has not expressly addressed the role of post-sale confusion in its case law, it has nevertheless acknowledged that "[t]he facts of a particular case may require consideration of other variables" in addition to those enumerated in Section 729 of the Restatement of Torts. *Beer Nuts*, 711 F.2d at 940, 221 USPQ at 215. We conclude that consideration of post-sale confusion in determining likelihood of confusion is not inconsistent with Tenth Circuit trademark law, *cf. Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556, 224 USPQ 128 (10th Cir.1984) (recognizing the breadth of protection afforded by the Lanham Act), and would likely be adopted by the Tenth Circuit if it considered the issue head-on. In so concluding, we are persuaded not only by the merits of the issue, but also by the widespread recognition by so many other circuits of the importance of post-sale confusion.

Consideration of post-sale confusion is singularly warranted in the instant case. The degree of similarity between Payless' marks and the indisputedly strong STARCREST and STRIPECHECK marks is, as the district court recognized, remarkable. The district court discounted that similarity because other factors (*viz.*, the nature of the marketing, the market channels, and the degree of care exercised by a purchasing consumer) weighed against a finding of a likelihood of confusion. Those factors, however, are all directed to *pre*-sale confusion. They are im-

---

4. We do not give much weight to the conclusory "finding" by the district court that the likelihood of post-sale confusion was slight. It is clear from the court's discussion that its rejection of Ree-

bok's post-sale confusion claim was premised on the fact that the Tenth Circuit had not addressed the issue in its case law.

material to the issue whether actionable confusion is likely to occur *after* the marked product has entered the public arena. For example, post-sale observers may be unaware that Payless and Reebok shoes are sold in different stores or at different prices, yet their confusion may be detrimental to Reebok.

Similarly, with respect to Reebok's federal and state unfair competition claims, the district court concluded that the difference in the marketing channels and the degree of care exercised by the purchasing consumer precluded Reebok from showing a likelihood of confusion, notwithstanding that it acknowledged the similarity between the trade dress of the accused shoes and Reebok's shoes. Post-sale confusion is equally relevant to a claim of trade dress infringement as it is to trademark infringement. *See, e.g., Lois Sportswear,* 799 F.2d at 871, 872–73, 230 USPQ at 834, 835 (post-sale confusion also relevant to section 43(a)). We thus hold that the district court abused its discretion by failing to consider adequately all the issues relating to likelihood of confusion, including the existence of post-sale confusion.

### C. *Design Patent Infringement*

 Under the test set forth by the Supreme Court, infringement of a design patent requires a showing that the accused design is substantially the. same as the claimed design. That is,

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Co. v. White,* 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871). In addition, "the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art." *Avia Group Int'l, Inc. v. L.A. Gear Calif.,* 853 F.2d 1557, 1565, 7 USPQ2d 1548, 1554 (Fed.Cir.1988) (quotation and citations omitted).

 Reebok contends that the district court erred in finding that Reebok did not show a reasonable likelihood of success on the merits of its design patent infringement claim. With respect to the '353 and '809 patents, Reebok maintains that the district court misapplied the *Gorham* test for design patent infringement because it compared the accused footwear with commercial embodiments of the patents, rather than with the claimed designs. Reebok alleges that, in doing so, the court improperly distinguished the accused footwear from the patented designs on the basis of features not in the claimed designs. We agree.

Proper application of the *Gorham* test requires that an accused design be compared to the claimed design, not to a commercial embodiment. *See Unette Corp. v. Unit Pack Co., Inc.,* 785 F.2d 1026, 1028, 228 USPQ 933, 934 (Fed.Cir.1986). Unlike the situation in *Lee v. Dayton–Hudson Corp.,* 838 F.2d 1186, 5 USPQ2d 1625 (Fed.Cir.1988), the record in the instant case clearly shows that the district court was improperly influenced by features extraneous to the claimed design and that its decision turned on those features. For example, the court found that the design of Payless' XJ 900 model was distinguishable from the design claimed in the '353 patent because the XJ 900 had additional black coloring and did not have the logo "PUMP" that is printed on the orange basketball on the tongue of the Reebok shoe. Similarly, the court distinguished Payless' "Attack Force 9160" model from the '809 patent design because the 9160 "has an orange basketball on the tongue, which the Reebok shoe does not have." 804 F.Supp. at 215, 25 USPQ2d at 1137. None of those cited features, however, is part of the claimed designs and thus they may not serve as a valid basis for comparison in a design patent infringement analysis.

Reebok also asserts that the district court erred in distinguishing the design of Payless' ProWings 9153 model from the design claimed in the '508 patent. Indeed, the only difference articulated by the district court between the two "admittedly similar" designs was the difference in the heel pieces. We have emphasized that in conducting a design patent infringement analysis, "the patented design is viewed in its entirety, as it is

claimed.... [T]he ultimate question requires determining whether 'the effect of the whole design [is] substantially the same.'" *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d at 1117, 25 USPQ2d 1913, 1918 (Fed. 1993) (citations omitted). Moreover, we have stated that "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Litton Sys., Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1444, 221 USPQ 97, 110 (Fed.Cir.1984). Here, the district court's infringement analysis clearly evidences a focus on a single difference as opposed to the entirety of the patented design. Thus, the district court erred by failing to "consider the ornamental aspects of the design as a whole and not merely isolated portions of the patented design." *Braun,* 975 F.2d at 820, 24 USPQ2d at 1125.

We therefore hold that the district court erred as a matter of law by failing to apply the proper legal analysis and thus abused its discretion in determining that Reebok is not reasonably likely to succeed on the merits of its patent infringement claims.

D. *Other Preliminary Injunction Factors*

In addition to finding that Reebok was not likely to succeed on the merits of its claims, the district court determined that the balance of harms tipped decidedly in Payless' favor. The court found that Payless would suffer significant financial hardship if the preliminary injunction issued. On the other hand, the court found that the harm to Reebok's reputation if the injunction was denied was belied by the fact that Payless had sold some forms of the accused shoes since the 1980's. The court also found that the likelihood of irreparable harm to Reebok was diminished in view of the different market channels. Lastly, the court found that the public interest favored keeping Payless' lower priced shoes on the market.

The district court's erroneous focus solely on pre-sale confusion factors in finding no likelihood of success on the merits of Reebok's trademark and trade dress claims unquestionably influenced its evaluation as to whether Reebok would suffer irreparable harm if the injunction was denied. Regarding Reebok's patent infringement claims, to the extent that the district court's findings on the other preliminary injunction factors were tainted by its clearly erroneous finding on the likelihood of success on the merits, they too are clearly erroneous. Moreover, the court, in concluding that the public interest favored keeping Payless' lower priced shoes on the market, failed to take into consideration that selling a lower priced product does not justify infringing a patent. Were that to be a justification for patent infringement, most injunctions would be denied because copiers universally price their products lower than innovators.

As the Tenth Circuit held in an earlier case, although likelihood of success on the merits is but one prerequisite to the issuance of a preliminary injunction, a remand for reconsideration is warranted where a district court's erroneous determination that confusion was unlikely may have affected its resolution of the other three prerequisites. *Amoco Oil,* 748 F.2d at 559, 224 USPQ at 130. Accordingly, we vacate the district court's order denying preliminary injunctive relief with respect to Reebok's claims based on trademark infringement, unfair competition, and design patent infringement, and we remand the case to the district court to reconsider its denial of Reebok's motion in a manner consistent with our decision.

## CONCLUSION

The district court abused its discretion in committing legal error by failing to adequately consider the extent of post-sale confusion between Payless' and Reebok's shoes and by conducting an improper design patent infringement analysis. Because the court's error affected its findings with regard to the other preliminary injunction factors, we vacate the court's denial of Reebok's motion for a preliminary injunction and remand the case to the court for reconsideration of the motion.

## COSTS

Costs to Reebok.

***VACATED AND REMANDED.***