**KARL STORZ ENDOSCOPY–AMERICA, INC., a California corporation, Plaintiff–Appellant,**

v.

**SURGICAL TECHNOLOGIES, INC., a Florida corporation, dba Surgi–Tech; Pacific Medical Repair, a sole proprietorship, Defendants–Appellees.**

No. 00–55147.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 2001.

Filed April 4, 2002.

---

Mark R. Kravitz, Wiggin & Dana, New Haven, CT, for the plaintiff-appellant.

G. Dale Britton, Klinedinst, Fliehman & McKillop, San Diego, CA; John Evan Ed-

wards, John & Edwards LLP, San Diego, CA, for the defendants-appellees.

Before KOZINSKI and THOMAS, Circuit Judges, and WHYTE,* District Judge.

## OPINION

WHYTE, District Judge.

Appellant Karl Storz Endoscopy–America, Inc. ("Storz") appeals the district court's grant of summary judgment to appellees Surgical Technologies, Inc. ("Surgi–Tech") and Pacific Medical Repair ("Pacific") on Storz's trademark infringement claims.[1] Storz contends that the district court erred in determining that Surgi–Tech's repair and refurbishment of Storz's rigid endoscopes, and Pacific's solicitation of those repairs, do not constitute Lanham Act violations.

## I. BACKGROUND

### A. Factual Background

Karl Storz GmbH & Co. ("KST") has manufactured and sold Karl Storz rigid endoscopes for many years. Appellant Storz, a wholly-owned subsidiary of KST, is the exclusive United States distributor of Karl Storz rigid endoscopes. Endoscopes are precision surgical instruments used in many types of minimally-invasive surgical and diagnostic procedures, such as arthroscopy, urology and gynecology, to

---

* The Honorable Ronald M. Whyte, United States District Judge for the Northern District of California, sitting by designation.

1. Storz also appeals the judgment entered against it on its claims under Section 17200 of the California Business and Professions Code. However, since these claims are "sub-stantially congruent" to claims made under the Lanham Act, we do not separately address them except with respect to issues pertaining to the statute of limitations and laches. *See Denbicare U.S.A. Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143, 1152 (9th Cir.1996) (internal quotation omitted).

obtain a focused and properly illuminated view of internal body areas under examination. An endoscope consists of an elongated tube, or shaft, containing fiber optics and lenses which illuminate and transmit a view of the internal body area to the end of the shaft where it can be seen by the surgeon through an eyepiece or video camera and monitor. The endoscope may also include a means for delivering laser light to the area and channels for passing elongated instruments into the body. The name "Karl Storz" is prominently etched or engraved on the face of a block element located between the eyepiece and the shaft of each Karl Storz rigid endoscope.

Rigid endoscopes cost thousands of dollars. Therefore, when they become damaged, they are generally repaired rather than discarded. Appellee Surgi–Tech performed repairs to endoscopes and other medical instruments.[2] When Surgi–Tech was founded in 1984, the only companies that performed repairs to endoscopes were the manufacturers themselves. Because Surgi–Tech was able to perform repairs more quickly and for a lower cost than the manufacturers, it was able to compete successfully in the market for repair of surgical scopes and other instruments. Eventually, Surgi–Tech was joined in the market by more than 50 other independent surgical instrument repair companies.

Surgi–Tech received broken endoscopes directly from hospitals and doctors, as well as from independent agents such as appellee Pacific. Surgi–Tech then performed the repairs requested by the doctor or hospital. After completing the repairs, Surgi–Tech returned the scopes to the owners, and the owners paid the repair charges.

Because endoscopes must be sterilized before use, any shipping papers or labels from the repairer were not attached to the scopes when they were handed to surgeons in the operating rooms.

Surgi–Tech offered services ranging from minor repairs and cleaning to complete rebuilds. "Complete rebuilds" constituted approximately 20% of Surgi–Tech's rigid endoscope repairs. An endoscope shaft that has been fractured or badly bent is not repairable because the bending or fracturing of the shaft shatters the internal lenses. Further, because the shaft is permanently welded to the block, a broken shaft cannot simply be replaced. Instead, the endoscope needs to be rebuilt, which involves meticulously disassembling the existing scope and then reconstructing it with replacements for the parts that need to be replaced. Surgi–Tech obtained the replacement parts for such rebuilds from various manufacturers. Storz asserts that Surgi Tech's rebuilds replaced "essentially *all* of the endoscope's functional parts," retaining only the block element bearing Storz's trademarks. Surgi–Tech also offered "relensing" among many other types of repair services. "Relensing" was less complicated than a complete rebuild but still involved replacing the endoscope's lenses with lenses from various manufacturers. Although Surgi–Tech at one point etched a Surgi–Tech marking onto the endoscopes it repaired, it informed its dealers and employees in a May 10, 1996 letter that it would no longer do so because competitors were "bad-mouthing" Surgi–Tech's work. Surgi–Tech explained that if Surgi–Tech repaired and labeled a scope, and another repair vendor later performed shoddy repairs without etching its own

---

**2.** In January 1999, all of the assets of Surgi–Tech were sold to Allegiance Healthcare Corporation. Surgi–Tech then changed its name to Laszlo Medical Systems, a Florida Corporation. Laszlo Medical Systems no longer has any employees, and, as of June 11, 1999, was conducting no business of any kind.

mark on the scope, the only "visible culprit" would be Surgi–Tech.

Pacific solicits repair orders for endoscopes and other surgical equipment from hospitals, medical groups and other owners of those instruments. Either the owner or Pacific then sends the endoscope or other instrument to a third party repair facility such as Surgi–Tech. Pacific then monitors the status of the repairs for the owner and tracks the return of the instrument to the owner. Pacific then invoices the owner for the repairs. Pacific does not perform any repairs itself.

On several occasions, surgeons have complained to Storz's sales representatives about the quality and performance of what the surgeons believed to be original Storz endoscopes but which, upon inspection by Storz, turned out to be Storz endoscopes repaired or rebuilt by some third party. Storz was not able to determine whether it was Surgi–Tech, versus another repair company, that had performed the repairs or rebuilds.

## B. Procedural Background

Storz brought this action against Surgi–Tech and Pacific on April 2, 1998, alleging claims for trademark and trade dress infringement, unfair competition and passing off in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and for unfair trade practices in violation of California Business and Professions Code § 17200 *et seq.* On August 31, 1999, the district court granted summary judgment to Pacific (the "Pacific order"). On September 22, 1999, the court granted in part and denied in part Surgi–Tech's motion for summary judgment (the "Surgi–Tech order").

In the Surgi–Tech order, the court held that although Storz had failed to raise an issue of material fact on the claim that Surgi–Tech's repair and refurbishment of endoscopes for owners constituted a Lanham Act violation, material issues of fact were raised as to whether Surgi–Tech's distribution of repaired endoscopes to entities other than original owners, such as third party dealers or other entities engaged in purchasing and reselling endoscopes to the general public, violated Storz's trademark rights. In both the Pacific and Surgi–Tech orders, the court held that the repair and refurbishment of endoscopes does "not necessarily" constitute an unlawful "use in commerce" under the Lanham Act and that Storz had failed to raise a triable issue of material fact as to the likelihood of confusion.

On December 20, 1999, the parties stipulated to dismissal of the remaining claims against Surgi–Tech to facilitate an immediate appeal. The district judge signed an order of final judgment on December 21, 1999, and the clerk entered final judgment on January 12, 2000. Storz filed its notice of appeal on January 20, 2000.

## II. ANALYSIS

### A. Likelihood of Confusion

The district court held that Storz failed to raise a triable issue of material fact as to the likelihood of confusion. We do not agree.

A district court's grant of summary judgment is reviewed *de novo. Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir.1999). In order to prevail on its Lanham Act claims, which are brought under section 32 (15 U.S.C. § 1114) and section 43(a) (15 U.S.C. § 1125(a)) of the Act, Storz must show that Surgi–Tech "use[d]" Storz's trademark "in commerce" and that the use was likely to confuse customers as to the

source of the product.[3] 15 U.S.C. §§ 1114(1), 1125(a)(1). Section 1114 provides in part that:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . .

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

Section 1125(a)(1) provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

" 'Likelihood of confusion' is the basic test for . . . trademark infringement." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1403 (9th Cir. 1997). It exists "whenever consumers are likely to assume that a mark is associated with another source" because of similarities between two marks. *Acad. of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.,* 944 F.2d 1446, 1456 (9th Cir.1991). Storz argues that once Surgi–Tech performed extensive reconstruction to a scope, the source of that scope became Surgi–Tech, yet the Storz mark remained and consumer confusion resulted. Surgi–Tech and Pacific respond that there could be no confusion because the owner itself (the hospital) commissioned the work and thus knew who performed it.

■ The law in the Ninth Circuit is clear that "post-purchase confusion," *i.e.,* confusion on the part of someone other than the purchaser who, for example, simply sees the item after it has been purchased, can establish the required likelihood of confusion under the Lanham Act. *See Acad. of Motion Picture Arts and Sciences,* 944 F.2d at 1456; *Levi Strauss & Co. v. Blue Bell, Inc.,* 632 F.2d 817, 822 (9th Cir.1980). Similarly, in *Payless Shoesource, Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985 (Fed.Cir.1993), the Federal Circuit noted that the 1962 amendments to section 32 of the Lanham Act specifically struck language limiting the scope of the Act to confusion by "purchasers." 998 F.2d at 989. The court held, following decisions including *Levi Strauss,* that an action for trademark infringement can in fact be based upon the confusion of non-purchasers, such as those who simply observe the purchaser wearing the accused article of clothing. *Id.* "Post-sale" confusion, the court noted, may be no less injurious to the trademark owner's reputation than confusion on the part of the purchaser at the time of sale. *See id.* at 989–90.

---

**3.** Pacific makes arguments similar to those raised by Surgi–Tech based on use in commerce and likelihood of confusion; Pacific does not argue that it has some separate defense or cannot be liable as a "middleman."

Although surgeons working at hospitals that own Storz endoscopes are not the purchasers of those endoscopes, they are the people who ultimately handle and use the scopes. Further, the evidence indicates that surgeons can affect a hospital's equipment purchasing decisions. Storz submitted evidence of actual confusion on the part of surgeons as to whether malfunctioning Storz endoscopes were original Storz scopes or had been repaired or rebuilt by someone other than Storz. Although it has apparently never been determined that any of these repairs or rebuilds were actually performed by Surgi-Tech, as opposed to another repair company, it is undisputed that Surgi-Tech repaired and rebuilt Storz scopes for hospitals without placing its own mark on those scopes. Further, Surgi-Tech's May 10, 1996 letter to its employees admits that a repairer's failure to mark a scope after performing repairs creates confusion as to who performed the work, implying that the same confusion would be caused if only the original manufacturer's mark remained on the scope after repairs.

## B. Use in Commerce

Since Storz raised a material factual question as to the existence of customer confusion, we must address whether Surgi-Tech used Storz's trademark in commerce. Although the district court based its decision on a finding that the repair and refurbishment of endoscopes at the request of owners does not create a likelihood of confusion, it also observed that the repair and refurbishment of endoscopes does "not necessarily" constitute an unlawful "use in commerce" under the Lanham Act. Since we may affirm a summary judgment on any ground finding support in the record, whether or not relied upon by the trial court, *Jewel Cos., Inc. v. Pay Less Drug Stores Northwest, Inc.*, 741 F.2d 1555, 1564–65 (9th Cir.1984), we must decide whether Storz raised a triable issue of fact as to whether Surgi-Tech's repair or reconstruction constituted a "use in commerce."

Under 15 U.S.C. § 1127, a mark is in "use in commerce" when (1) the mark has been placed on the goods or their containers, labels or the documents associated with the goods or their sale, and (2) the goods are "sold or transported in commerce." 15 U.S.C. § 1127.

The "or transported" language of 15 U.S.C. § 1127 makes it clear that a "use in commerce" under the Lanham Act is not limited to sales. The sending of a product from Los Angeles to New York with its label attached so that its trademark could be registered has been considered transportation in commerce. *See Drop Dead Co. v. S.C. Johnson & Son, Inc.*, 326 F.2d 87, 93 (9th Cir.1963). Further, nothing in the language of the statute itself expressly precludes a repair or reconstruction from constituting a "use in commerce." However, "use in commerce" appears to contemplate a trading upon the goodwill of or association with the trademark holder. *See id.* at 90. Therefore, a mere repair of a trademarked good, followed by return of the good to the same owner who requested the repair or rebuild, does not constitute a "use in commerce" of the trademark under the Lanham Act.

Although Storz appears to acknowledge that repairs can be made to a trademarked good without violating the Lanham Act, Storz argues that this case presents unique facts because Surgi-Tech did not merely repair or refurbish endoscopes; it in some cases replaced every "essential" part of a scope and then simply attached this "new" scope to the old base bearing Storz's trademark. Thus, Storz argues, the transaction was functionally equivalent to a "sale." This argument has merit.

A mere repair for an owner's personal use must be contrasted with a complete rebuild where the rebuilt product will be used by a third party. If the reconstructed product still bearing the original manufacturer's trademark is so altered as to be a different product from that of the original manufacturer, the repair transaction involves a "use in commerce." The repair company in that situation is trading on the goodwill of, or association with, the trademark holder.

In some of Surgi–Tech's rebuilds, the customer-owner gave Surgi–Tech a broken Storz endoscope, and Surgi–Tech discarded every important part but retained the block. It discarded the long shaft which is inserted into the patient's body cavity, the light post which focuses the light, the optic fibers that carry the light, the various lenses that magnify and focus the image, the eyepiece through which the surgeon looks and miscellaneous other parts. Surgi–Tech then proceeded to build a brand new scope using its own parts and attached to it the one piece from the Storz scope that it did not discard, namely the block which carries the Storz trademark. When the owner of the broken scope got back the rebuild, it paid Surgi–Tech a fee which covered the cost of the spare parts plus the skill in assembling them so that the rebuild would look and work more or less like a Storz scope. As a consequence, downstream consumers (here the doctors who use the scopes) were potentially deceived about the scope's origin.

We conclude that where the substance of Surgi–Tech's repair or rebuild was the construction of a different product associated with the Storz trademark, there was a use in commerce. *See Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 713–14 (9th Cir.1999) (holding that a seller of reconditioned Rolex watches could be enjoined from using the Rolex trademark because the alterations were so basic that they resulted in a different product). Because Storz presented evidence that Surgi–Tech's rebuilds were the construction of a different product associated with Storz's trademark, a triable issue of fact as to a "use in commerce" was raised.

We do, however, recognize the right of property owners to repair or alter trademarked goods without implicating the Lanham Act. For example, if the owner chooses to buy aftermarket spare parts and do the repairs himself, there is no sale of a trademarked good in commerce, and hence no trademark infringement. Where the repair is done by an outside contractor, as is the case here, the question is whether the trademarked product is so altered that the substance of the transaction is a sale, and it would be misleading to sell the product without noting the alterations. *See Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 129, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947). For example, a district court correctly recognized that a defendant who cleaned, resterilized and resharpened medical instruments for hospitals, including those manufactured and trademarked by the plaintiff, did not use plaintiff's trademark in commerce. *U.S. Surgical Corp. v. Orris, Inc.*, 5 F.Supp.2d 1201, 1209 (D.Kan. 1998). ("U.S. Surgical cannot point the court to a single case in which the repair of a trademarked item alone is sufficient to subject the defendant to trademark or unfair competition liability.").

There is no brightline test for determining whether a company that repairs or reconstructs goods and retains the original manufacturer's trademark on the goods is using the trademark in commerce. However, there are a number of factors to consider in determining whether the company has made a different product. Those factors include the nature and extent of the alterations, the nature of the device

and how it is designed (whether some components have a shorter useful life than the whole), whether a market has developed for service and spare parts, *see Bottom Line Mgmt., Inc. v. Pan Man, Inc.*, 228 F.3d 1352, 1355–56 (Fed.Cir.2000) (discussing the factors considered in patent cases as to whether there has been a repair or an impermissible reconstruction), and, most importantly, whether end users of the product are likely to be misled as to the party responsible for the composition of the product. *See Rolex*, 179 F.3d at 709–10.

### C. Statute of Limitations and Laches

■■■■ The district court considered and rejected without prejudice Surgi–Tech's statute of limitations and laches arguments. Storz's Lanham Act claims are subject to a three-year statute of limitations which began to run upon Storz's actual or constructive knowledge of the wrong. *See General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991); Cal.Civ.Proc.Code § 338(d). Storz's claims under California Business and Professions Code § 17200 *et seq.* are subject to a four-year statute of limitations which began to run on the date the cause of action accrued, not on the date of discovery. Cal. Bus. & Prof.Code § 17208.

■■■■ Surgi–Tech argues that although Storz was confronted no later than 1992 with endoscopes that had allegedly been inappropriately repaired by Surgi–Tech, Storz waited six years, until April 1998, to file suit. However, as Storz points out, Surgi–Tech's own memorandum to its employees indicates that until May 1996 it etched its own mark onto the endoscopes it repaired. Storz's claims are grounded in its contention that it is Surgi–Tech's failure to mark the endoscopes it repaired that constitutes the wrongful conduct. Storz's action, filed approximately two years after the allegedly wrongful conduct commenced, is not barred by the statute of limitations or the doctrine of laches.

### III. CONCLUSION

Based on the foregoing, the district court's grant of summary judgment in favor of Surgi–Tech and Pacific is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

