**UNIQUE FUNCTIONAL PRODUCTS, INC., Plaintiff–Appellee,**

v.

**MASTERCRAFT BOAT COMPANY, INC. and Reliable Tool and Machine Co., Inc., Defendants–Appellants.**

Nos. 03–1157, 03–1246.

United States Court of Appeals, Federal Circuit.

DECIDED: Nov. 18, 2003.

Before MICHEL, LOURIE, and DYK, Circuit Judges.

LOURIE, Circuit Judge.

Mastercraft Boat Company, Inc. and Reliable Tool and Machine Co., Inc. appeal from the November 20, 2002 Order of the United States District Court for the Central District of California in *Unique Functional Products, Inc. v. Mastercraft Boat Co.*, No. EDCV 02–00968–VAP(SGLx), granting Unique Functional Products, Inc.'s motion for preliminary injunction in a suit for infringement of Unique's U.S. Design Patent 320,777. Because the district court erred as a matter of law in its construction of the '777 patent claim, and concluded that Unique is likely to succeed on the merits of its infringement claim and that a preliminary injunction should therefore be granted on the basis of that incorrect construction, we *vacate* the preliminary injunction.

## BACKGROUND

Unique owns the '777 design patent and a utility patent, U.S. Patent 5,013,059, both directed to trailer couplers having built-in trailer brake actuators. *Unique,* slip op. at 7. Figures 1 and 7 of the '777 patent, perspective views of the two embodiments of Unique's coupler design, are shown below:

In September 2002, after Unique's former customer Mastercraft apparently stopped purchasing Unique's couplers (referred to in the district court's order as "UFP actuators") and instead began buying trailer couplers manufactured by Reliable (i.e., "RTM actuators"), Unique sued Reliable and Mastercraft. *Id.* at 2–3. In its complaint, Unique alleged infringement of the '777 patent and a barrage of other causes of action, including federal trade dress infringement, unfair competition, false designation of origin, and false advertising in violation of the Lanham Act; trade dress infringement, unfair competition, false advertising, and unfair business practices and false statements under California law; and common law trade dress infringement, unfair competition, and false advertising. *Id.* at 3. Unique also sought a preliminary injunction to enjoin production of the Reliable couplers. *Id.* A perspective view of the allegedly infringing Reliable coupler is shown below:

The district court concluded that the Unique coupler was not unique, finding the Reliable coupler to be "nearly identical" to it as a result of both couplers having: (1) a streamlined, rectangular, box-like exterior lacking any bulky metal protrusions on the top, underside, or sides of the actuator; (2) a width and a height not substantially larger than those of the extension tongue of the trailer to which they mount; and (3) an outer housing consisting of metal colored to match a customer's boat trailer. *Id.* at 12. Moreover, according to the court, an "ordinary observer" would find the two designs to be "substantially the same." *Id.* at 13–14.

Based on the above findings, the court concluded that Unique is likely to succeed on the merits of its infringement claim. *Id.* at 14. Because the court also found that Reliable did not demonstrate that Unique would not suffer irreparable harm if the Reliable couplers were allowed to remain on the market, *id.* at 14–19, that the balance of hardships tilted slightly in Unique's favor, *id.* at 19–20, and that a preliminary injunction would benefit the public's strong interest in protecting patent rights, *id.* at 20, the court granted Unique's motion for preliminary injunction, *id.* at 22.

Mastercraft and Reliable now appeal. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) and (c)(1).

## DISCUSSION

Injunctive relief in patent cases is authorized by 35 U.S.C. § 283. As a necessary prerequisite to the grant of a preliminary injunction, however, a movant must establish a likelihood of success on the merits. *Hybritech Inc. v. Abbott Labs.,* 849 F.2d 1446, 1451 (Fed.Cir.1988). Determination whether a design patent is infringed involves a two-step inquiry: (1) construction of the patent claim, and (2)

comparison of the construed claim to the accused product. *Contessa Food Prods. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed. Cir.2002). In the first step, "the scope of the claimed design encompasses its visual appearance as a whole, and in particular the visual impression it creates." *Id.* (internal quotation marks and citations omitted). The second step requires the application of two distinct tests. The first of those tests, the so-called "ordinary observer" test, was articulated as follows by the Supreme Court more than 130 years ago in *Gorham Mfg. Co. v. White*, 81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1871):

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Id.* at 528. "Proper application of the *Gorham* test requires that an accused design be compared to the claimed design, not to a commercial embodiment." *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed.Cir.1993). However, "[w]hen no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error ... to compare the embodiment of the patented design with the accused devices." *Lee v. Dayton–Hudson Corp.*, 838 F.2d 1186, 1189 (Fed.Cir.1988). The second test, the "point of novelty" test, requires proof that the accused design appropriates the novelty which distinguishes the patented design from the prior art. *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed.Cir.1984). It is generally legal error to merge the two tests, for example, by relying on the claimed design as a whole as the point of novelty, for "[t]o consider the overall appearance of a design without regard to prior art would

eviscerate the purpose of the 'point of novelty' approach, which is to focus on those aspects of a design which render the design different from prior art designs." *Winner Int'l Corp. v. Wolo Mfg. Corp.*, 905 F.2d 375, 376 (Fed.Cir.1990). Thus, "even though the court compares two items through the eyes of the ordinary observer, it must nevertheless, to find infringement, attribute their similarity to the novelty which distinguishes the patented device from the prior art." *Litton*, 728 F.2d at 1444.

We review the district court's claim construction *de novo*. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed.Cir. 1998) (en banc). The decision to grant or deny a preliminary injunction is committed to the sound discretion of the trial court. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed.Cir.2001). An abuse of discretion "occurs when (1) the court's decision is clearly unreasonable, arbitrary or fanciful; (2) the decision is based on an erroneous conclusion of law; (3) the court's findings are clearly erroneous; or (4) the record contains no evidence on which the district court rationally could have based its decision." *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022 (Fed.Cir.1986) (internal quotation marks and citations omitted). "Such abuses must be unusual and exceptional; we will not merely substitute our judgment for that of the trial judge." *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir.1975).

On appeal, Reliable argues that the district court erred both in its construction of the '777 patent's claim and in its comparison of the accused product to the claimed design. First, according to Reliable, the court erroneously included functional elements (*e.g.*, the rectangular outer housing) and elements not depicted in the figures (*e.g.*, the actuators' size and color) when

construing the '777 patent's claim. Reliable asserts that the court also erred in its claim construction by excluding elements that were affirmatively depicted in the claim, including the boxy, blunt nose of the coupler; the coupler's square, block face with an open "mouth"; and the coupler's square-topped ball hitch release latch.

Second, Reliable argues that the district court erred in its comparison of the accused product to the construed claim, in determining that the "streamlined" housing of the actuator depicted in the '777 patent was the "point of novelty," given that at least two prior art references depicted the same feature, and in so doing might have confused the "ordinary observer" and "point of novelty" tests. According to Reliable, the only similarity between the Reliable coupler and the design depicted in the '777 patent is the rectangular outer housing that they share, which was described and shown in the prior art and is, in any event, necessarily rectangular to fit over and mount to a standard trailer tongue. Reliable contends that, rather than compare the Reliable coupler with the figure in the '777 patent, the court compared it with Unique's commercial product. Moreover, the forward, or "nose," portion of the Reliable coupler is similar to that shown in the prior art U.S. Patent 3,888,-517 (the "Ray" patent"), Reliable argues, and differs from the ornamental design features of the '777 patent in at least four ways: (1) the Reliable coupler's nose is rounded, rather than boxy and blunt; (2) the Reliable coupler slopes sharply downward, rather than having a square- or block-shaped face; (3) the Reliable coupler's ball hitch release latch is integrally formed into the closed face of the nose, rather than being a square lid over an open mouth; and (4) the exposed top of the Reliable coupler's ball hitch release latch is trapezoidal, rather than square.

Finally, Reliable argues that the court also erred in finding a likelihood of success of Unique's infringement claim in the absence of any evidence regarding the impressions of an ordinary purchaser and whether such a person would be likely to be deceived into believing that the claimed design and the accused product design were the same.

Unique responds that the district court found that the Reliable coupler is "virtually identical" to the Unique coupler, and that the Reliable and Unique couplers are sold to the same types of customers. Although there are variations in the "nose" portion of the Reliable coupler vis-à-vis the '777 patent's illustrations, Unique contends, those variations are imperceptible compared to the overall appearance of the coupler; Unique further argues that those variations simply represent an attempt by Reliable to conceal and shelter its "piracy."

According to Unique, before it developed its streamlined coupler, all previous couplers were bulky and substantially larger than the trailer tongues to which they attached. Unique asserts that the totality of the ornamental elements depicted in the '777 patent was considered by the district court during claim construction, and that it is the total visual impression that matters, not the individual features of the claimed design. Unique also argues that it was not reversible error for the district court to consider the Unique coupler when construing the claim of the '777 patent, because this court stated in *Sun Hill Industries, Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193 (Fed.Cir.1995), that when no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error to compare the embodiment of the patented design with the accused device.

Finally, Unique asserts that the district court correctly found that the '777 patent

design is distinguishable from the Ray patent, which depicts a protrusion on its upper surface and a lip that extends around its base.

■ We agree with Reliable that the district court erred in its construction of the claim of the '777 patent by neglecting certain features shown in the patent and instead including certain features of Unique's commercial embodiment. On the one hand, every figure in the '777 patent clearly depicts a coupler having a boxy, blunt nose with a substantially square- or box-shaped face. The figures also clearly illustrate a square lid covering an otherwise open mouth through which the depicted coupler's ball hitch release latch is accessible. On the other hand, contrary to the district court's claim construction, *Unique,* slip op. at 10, the '777 patent does not specify the width or height of the coupler relative to the size of the extension tongue of the trailer to which the coupler attaches. Further, the patent does not indicate that the coupler's outer housing is colored to match the trailer. Thus, as in

*Payless Shoesource, Inc. v. Reebok International Ltd.,* 998 F.2d 985 (Fed.Cir.1993), the record "clearly shows that the district court was improperly influenced by features extraneous to the claimed design and that its decision turned on those features." *Id.* at 990; *see also Sun Hill,* 48 F.3d at 1196 ("The trial court committed legal error by relying on unclaimed features of Sun Hill's commercial embodiment."). It is of no consequence that those extraneous features are present in Unique's commercial embodiment. This is not a case such as that referred to in *Sun Hill* in which "no significant distinction in design has been shown between the patent drawing and its physical embodiment"; rather, it is clear that the Unique coupler includes features in addition to those shown in the '777 patent.

■ We also agree with Reliable that the Reliable coupler is dissimilar from the design shown in the '777 patent and, indeed, much more closely resembles the design disclosed in the prior art Ray patent, Figure 1 of which is shown below:

First, for example, the Reliable coupler has a rounded nose like Ray's coupler, whereas, as previously illustrated, the '777 patent requires a boxy and blunt nose. Second, the Reliable coupler's nose, like Ray's, slopes sharply downwardly, rather than having a substantially square or block-shaped face as required by the '777 patent. Third, the Reliable coupler has its ball hitch release latch integrally formed into its sharply downwardly sloping nose portion, as opposed to having a square lid over an open mouth as shown in the '777 patent.

Although the court found that the Reliable couplers, like Unique's commercial embodiment, have an outer housing having a width and a height not substantially larger than those of the extension tongue of the trailer to which they mount and consisting of metal colored to match a customer's boat trailer, the '777 patent is not limited to any particular size or color. We conclude, therefore, that the court erred by taking those features into consideration in its infringement analysis, although we cannot tell from the record how much weight the court put on the presence of those features or whether the court's errors in looking at the color and the size of the Reliable couple were consequently prejudicial. In any event, it appears that the only similarities between the Reliable coupler and the design depicted in the '777 patent are the rectangular shape of the outer housing that mounts to a standard trailer tongue constructed from rectangular steel tubing and the lack of any large protuberances from the top of the coupler.

■ We do agree with Unique that the rectangular coupler having a width and a height not substantially greater than those of the trailer extension arm to which the coupler mounts is not purely functional, because one could, after all, make a differently shaped coupler that includes a rect-angular opening to receive that extension arm. Nonetheless, because the Ray patent antedates the filing of the application that led to the '777 patent and also features a rectangular-shaped coupler body, the rectangular shape cannot be a point of novelty in Unique's design. The following statement from *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423 (Fed.Cir. 1984), is equally apt here: " '[W]hile there is some similarity between the patented and alleged infringing designs, which without consideration of the prior art might seem important, yet such similarity as is due to common external configuration is no greater, if as great, between the patented and challenged designs as between the former and the designs of the prior art.' " *Id.* at 1444 (quoting *Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F.2d 428, 430 (6th Cir.1933)).

Moreover, because Reliable has not appropriated any of the features that constitute the point of novelty in Unique's claimed design, we hold that Reliable's design cannot, as a matter of law, infringe the '777 patent.

## CONCLUSION

Because the district court's decision was based on an erroneous construction of the claim of the '777 patent, the court clearly erred in concluding that Unique had a reasonable likelihood of success on the merits of its infringement claim. The court's order granting Unique's motion for preliminary injunction was therefore an abuse of discretion and is vacated.